UNITED STATES v. FOUR HUNDRED AND TWENTY DOLLARS.

(District Court. S. D. Alabama.    June 13, 1908.)

No. 1,188.

ALIENS — CONSTRUCTION OF IMMIGRATION ACT — PENALTY FOR VIOLATION BY MASTER OF VESSEL.

The provision of Immigration Act Feb. 20, 1907, § 15, c. 1134, 34 Stat. 903 (U. S. Comp. St. Supp. 1907, p. 398), that the master of any vessel bringing aliens into the United States who shall fail to deliver to the immigration officers at the port of arrival lists or manifests of all aliens on board as required by sections 12 and 13, and containing the information therein specified, "shall pay to the collector of customs at the port of arrival the sum of ten dollars for each alien concerning whom the above information is not contained in any list as aforesaid," is penal in its nature, and must be strictly construed, and so construed it does not impose such penalty for the giving of incorrect or false information in such list, where it includes all the aliens on board, and purports to give the required information as to each.

Wm. H. Armbrecht, U. S. Atty.

Pillans, Hanaw & Pillans, for claimant.

TOULMIN, District Judge.  This is a libel of information against $420 as penalties claimed for an alleged violation, by the master of the Spanish bark Carvajal, of Act Feb. 20, 1907, to regulate the immigration of aliens into the United States.  34 Stat. 898, c. 1134 (U. S. Comp. St. Supp. 1907, p. 389).  The libel, in substance, alleges that upon the arrival of said bark Carvajal in the port of Mobile the master thereof delivered to the acting immigrant inspector at said port a paper purporting to be a list or manifest of the aliens brought in on said bark, which contained the names of said aliens and contained what purported to be the information required by the provisions of said act, and that said manifest was verified by the affidavit of the said master, as required by said act.  The libel further alleges that the said manifest was not correct, in that the said master, in answer to the question asked in said manifest concerning each of said aliens, "By whom was passage paid?" said, "By himself" (the alien), which answer was not true; that in truth and in fact the passage of said aliens, and each of them, was paid by some other person; and that at the time said master furnished said manifest to the immigration officer he well knew, or had reason to believe, that said answer was untrue, and the information thereby given was incorrect.  The libel charges that the furnishing of said incorrect manifest was not a bona fide compliance with said immigration act, "and was equivalent to furnishing no manifest whatever."  There were 42 aliens reported on the manifest.  A penalty of $10 being demanded for each of said 42 aliens, the aggregate sum of $420 has been deposited to stand in lieu of said vessel, to be disposed of and paid as, upon the hearing of the cause, the court may then adjudge. The prayer of the libel is that the said sum of $420 may, for the causes shown, be condemned to the use of and to be paid over to the United States.  The master of the vessel intervenes, and claims said sum of $420, and excepts to the bill of information as insufficient in law, and

shows no right in the United States to said money or any part thereof because the libel affirmatively shows that said master did not neglect or omit to deliver the list or manifest required by the immigration act, but did deliver the same containing the information required by said act; and said master further excepts to said libel and says that the fact, as alleged in the libel, that the manifest furnished was not correct, gives no right to the United States to collect the penalty sought to be enforced in this action. Wherefore he says he is not bound to further answer said libel, and prays that the same be dismissed and that the said sum of money be returned to him.

The immigration act provides that it shall be the duty of the master of a vessel having aliens on board to deliver to the immigration officers at the port of arrival lists or manifests made at the time and place of embarkation of such aliens on board such vessel, which shall, in answer to questions at the top of said lists, state certain things required as information. Among other questions contained in the lists is this:

"Whether the alien has paid his own passage, or whether it has been paid by any other person, * * * and, if so, by whom."

The lists or manifests are required by the act to be signed and sworn to by the master that, "according to the best of his knowledge and belief, the information in said lists or manifests concerning each of said aliens named therein is correct and true in every respect." Immigration Act, c. 1134, §§ 12, 13, 34 Stat. 901, 902 (U. S. Comp. St. Supp. 1907, p. 397, 398). It is further provided in section 15 of said act that, in case of the failure of the master of any vessel to deliver to the said immigration officers lists or manifests of all aliens on board thereof as required in sections 12 and 13 of the act, he shall pay to the collector of customs at the port of arrival the sum of $10 for each alien concerning whom the above information is not contained in any list as aforesaid. It will be observed that the payment of the penalty of $10 is exacted for the neglect or omission to include in the lists or manifest delivered to the immigration officers each and every alien on board of the vessel, concerning whom the information is required. If the master, in the list delivered, omits any one of such aliens, or omits the information required as to any one of them, he incurs the penalty of $10 for such omission. No penalty is prescribed by the act for furnishing incorrect information. It is imposed for the failure to deliver lists or manifests with the information required, but not for delivering lists which might contain incorrect information. The act is, in its nature, penal, and, in order to render the master liable to the penalty imposed by the act, it must appear that he has neglected or omitted to do some act which the law made it his duty to perform. Steam Engine Co. v. Howard, 101 U. S. 188, 25 L. Ed. 786. "A statute penal in character must be construed with strictness against those sought to be subjected to its liabilities." Chase v. Curtis, 113 U. S. 452, 5 Sup. Ct. 554, 28 L. Ed. 1038. "A penal statute should be strictly construed, and with a view of carrying out the object aimed at by such a statute, or on grounds of public policy, a court has no right to interpolate words into it." In re McDonough (D. C.)

49 Fed. 360; In re Coy (C. C.) 31 Fed. 800; U. S. v. Morris, 14 Pet. 464, 10 L. Ed. 543. Penal statutes are not to be enlarged by implication or extended to cases not obviously within their words. A court cannot create a penalty by construction. It cannot add to or take from a statute. In Wiltberger's Case, 5 Wheat. 76, 5 L. Ed. 37, Chief Justice Marshall said:

"The intention of the Legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction."

In Hamilton v. Rathbone, 175 U. S. 421, 20 Sup. Ct. 158 (44 L. Ed. 219), the court said: "The province of construction lies wholly within the domain of ambiguity." A penal law is one which prohibits an act and imposes a penalty for the commission of it; or one which requires an act to be done and imposes a penalty for the neglect or omission to do it. The term "penalty" denotes money recoverable by virtue of a statute imposing a payment by way of punishment. Black's Law Dictionary.

The law under consideration requires the master of a vessel bringing aliens into the United States to deliver to the immigration officers at the port of arrival lists or manifests of such aliens, said lists to contain certain information specified in the law, and it imposes a penalty for any neglect or omission to comply with the requirements of this law. If Congress had intended to impose a like penalty for any incorrect or false information furnished in said lists or manifests, it seems it would have said so in the law. But it may be said that it is material, and was the intention of Congress to have correct information concerning the aliens in question; and it may be asked what assurance is there that the information contained in said lists will be correct and true in the absence of a penalty for giving incorrect or false information. While it may be true that it is material, and was the intent of the law to obtain correct information on the subjects inquired about, and we do not know the motive of Congress in omitting to prescribe a penalty for furnishing incorrect information, we may well infer that it was because it was considered that the verification of the lists by the signature and oath of the master would be a sufficient assurance that said lists would speak the truth. The oath required to the lists is that, "according to the best of his knowledge and belief, the information in said lists or manifests concerning each of said aliens named therein is correct and true in every respect." The violation of this oath by the master in stating matters of information in the lists which he knew to be incorrect and untrue, or which he did not believe to be true, might subject him to severer punishment than the imposition of the penalty provided by the act under consideration, and it seems to me would be a greater assurance, if assurance were necessary, that the information furnished was correct and true in every respect, or believed to be so.

My opinion is that the exceptions to the libel of information are well taken, and the same are sustained.

The libel is therefore dismissed, with costs; and it is ordered that the said $420 be returned to Bernardo Jardon, the claimant in the cause.