No. 44,706

STATE OF KANSAS, *Appellee,* v. GEORGE T. FINLEY, *Appellant.*

(426 P. 2d 251)

Opinion filed April 8, 1967.

*Charles F. Forsyth,* of Erie, argued the cause, and *Clark M. Fleming,* also of Erie, and *John W. White,* of Chanute, were with him on the brief for the appellant.

*John W. Cooper,* Chief Counsel for the Motor Vehicle Department, argued the cause, and *Robert C. Londerholm,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which George T. Finley (defendant-appellant) was convicted of neglecting and refusing to return his operator's license and vehicle registration to the Motor Vehicle Department as required by K. S. A. 8-760. He was sentenced pursuant to K. S. A. 8-761, and appeal has been duly perfected from the judgment and sentence.

The questions presented are whether on the facts in this case the

appellant is subject to criminal prosecution, and if so whether the Motor Vehicle Safety Responsibility Act is constitutional as applied to the appellant.

The facts in the case have been stipulated and agreed upon by the parties.

The appellant, George T. Finley, resides on a farm near Erie, Neosho County, Kansas, and on August 31, 1965, he was the owner of a 1949 Dodge pickup truck. On that date the truck was properly registered with the state of Kansas and bore a 1965 Kansas license tag "N/O-T-530." On that date the appellant possessed a valid Kansas motor vehicle operator's license, but he had no applicable bodily injury or property damage insurance in effect while driving and operating the described pickup truck, or any other vehicle.

On the 31st day of August, 1965, the appellant was involved in a collision with another motor vehicle within Neosho County, Kansas, while driving his pickup truck, and copies of the drivers' reports to the Motor Vehicle Department of the state of Kansas were attached to the stipulation.

Pursuant to K. S. A. 8-726 the Motor Vehicle Department of the state of Kansas on October 11, 1965, notified the appellant that if he did not post security as required by the Motor Vehicle Safety Responsibility Act of Kansas, his driver's license, vehicle tags and registration receipts would be suspended as of October 22, 1965, a copy of which notice was attached to the stipulation.

The appellant failed to post security and failed to surrender his driver's license, vehicle tags and registration receipts.

On the 27th day of October, 1965, pursuant to the provisions of K. S. A. 8-727, an order of suspension was entered by the Motor Vehicle Department of the state of Kansas by reason of the appellant's failure to deposit security, and a copy of such order was attached to the stipulation. A copy of such order of suspension was served upon the appellant by certified mail and received by him on the 28th day of October, 1965.

On the 8th day of November, 1965, the appellant still failing to surrender his driver's license, registration receipts and vehicle tags, the Motor Vehicle Department issued a pickup order directed to its Neosho County representatives, R. H. Hazlett and H. E. Payne, and pursuant to such order these representatives contacted the appellant on November 17, 1965, and demanded surrender of his driver's license, vehicle tags and registration receipts, which demand

was refused by the appellant. Again on November 19, 1965, the appellant was contacted by these representatives and demand was again made upon him for surrender of his driver's license, vehicle tags and registration receipts, pursuant to the order issued by the Motor Vehicle Department. This demand was also refused.

At no time was the appellant before any court of competent jurisdiction and no court has ever issued an order requiring the appellant to surrender his driver's license, vehicle tags and registration receipts.

The vehicle involved in the accident herein was the sole vehicle owned by the appellant and was his sole means of transportation, both for himself and other members of his family. At the time of the accident the appellant's driver's license was in full force and effect and he had no record of careless or reckless driving. His motor vehicle was paid for and he had paid for his 1965 license plates.

On the 19th day of November, 1965, this action was instituted by filing a complaint in the city court of Chanute, Neosho County, Kansas.

From a conviction in the city court the appellant appealed to the district court of Neosho County, Kansas, where the case was submitted upon the foregoing agreed statement of facts. In a memorandum decision the trial court found the appellant guilty of the offense charged, and the appellant thereafter appeared for pronouncement of judgment and sentence on the 12th day of April, 1966. The appellant was sentenced to be confined in the Neosho County jail for a term of sixty days and to pay a fine of $250 and costs. A motion for a new trial was thereafter filed and overruled, whereupon appeal was duly perfected to this court.

This action concerns a criminal prosecution which appears to be one of first impression in the state of Kansas.

Here the alleged criminal act does not involve driving a motor vehicle without a proper license or regristration, but is based upon the appellant's failure to return to the Motor Vehicle Department his driver's license, automobile registration and license plates after suspension of his license for failure to deposit security subsequent to being involved in an accident.

In January, 1967, this court in *Agee v. Kansas Highway Commission*, 198 Kan. 173, 422 P. 2d 949, had before it an appeal from a decision under K. S. A. 8-723, another section under the Kansas

Motor Vehicle Safety Responsibility Act. There the appellee driver was involved in a vehicular accident in Kansas City, Kansas, which resulted in property damage of more than $100. The accident was duly reported and the Department, upon being advised that the appellee was not protected by liability insurance, issued an order requiring security to be deposited, advising the appellee as to the amount, or his license would be subject to suspension. Upon failure of the appellee to deposit the security required, the Department issued an order of suspension.

Pursuant to 8-723, *supra*, the appellee filed a written request for a hearing, and upon being heard by an agent of the Department the initial order of suspension was sustained. On appeal to the district court of Wyandotte County pursuant to the statute, the suspension order was reversed.

On appeal to this court by the Kansas Highway Commission from such adverse ruling this court, insofar as the decision is material herein, held:

"The purpose of the Kansas Motor Vehicle Safety Responsibility Act is to provide protection for members of the public in their use of the highways within this state by eliminating the reckless and irresponsible drivers by requiring, among other means, security from drivers and owners of motor vehicles involved in motor accidents.

"In determining the amount of security required to be deposited by a driver or vehicle owner after an accident, pursuant to the provisions of the Act, the existence or nonexistence of fault or responsibility for the accident, is immaterial and neither fault nor responsibility shall be considered by the Motor Vehicle Department of the State Highway Commission, which administers the Act, or by the district court on a petition for trial *de novo* from the Department's order.

"Under the provisions of the Motor Vehicle Safety Responsibility Act, a driver's license or a motor vehicle registration may be suspended regardless of fault or civil liability, as the Act is not designed to provide a forum for litigants to test their respective liabilities in actions for damages." (Syl. ¶¶ 1, 2 and 3.)

The sections of the Motor Vehicle Safety Responsibility Act pertinent to our decision in the instant case are as follows:

K. S. A. 8-760:

"Any person whose license or regristration shall have been suspended as herein provided, . . . shall immediately return his license and registration to the department. If any person shall fail to return to the department the license or registration as provided herein, the department shall forthwith direct any peace officer to secure possession thereof and to return the same to the department." (L. 1957, ch. 68, § 39; Jan. 1, 1958.)

K. S. A. 8-760a:

"Any person required . . . to surrender his operator's or chauffeur's license or the registration of all vehicles, including the number plates, owned by such person because of failure to deposit security . . . who shall fail, neglect, or refuse to surrender his operator's or chauffeur's license or the registration and license plates of any or all vehicles owned by him within the time prescribed by section 8-760 . . . shall not have his operator's or chauffeur's license returned or reinstated or a new operator's or chauffeur's license issued to him until he has paid to the motor vehicle department an additional fee of twenty-five dollars ($25). All fees collected by the motor vehicle department under the provisions of this section shall be paid into the state treasury and the state treasurer shall credit the same to the state highway fund. This section shall be and construed as a part of and supplemental to the motor vehicle safety responsibility act." (L. 1963, ch. 59, § 2; April 4.)

K. S. A. 8-761:

"Any person who shall violate any provision of this act for which no penalty is otherwise provided shall be fined not more than five hundred dollars ($500), or imprisoned not more than ninety (90) days, or both." (L. 1957, ch. 68. § 40; Jan. 1, 1958.)

To summarize briefly, it may be said K. S. A. 8-723 provides for the administrative appeal from an order of suspension as was issued in this case, and in the same section the aggrieved party is given the absolute right to a trial *de novo* in the district court of the county of his residence to determine whether such order is lawful and reasonable. This procedure was followed in *Agee v. Kansas Highway Commission,* supra. The suspension order involved here was imposed under the authority of K. S. A. 8-727; the duty to surrender is imposed by K. S. A. 8-760; and the penalty provisions asserted by the Motor Vehicle Department and adopted by the district court in pronouncing judgment and sentence are prescribed in K. S. A. 8-761.

It is the appellant's contention 8-760a, *supra,* prescribes the penalty for failure to return the driver's license, motor vehicle registration, and license plates to the Motor Vehicle Department—the payment of an additional fee of $25 to the Motor Vehicle Department before any new license or registration can be issued. The appellant argues this seems to be the only construction which could be placed upon 8-760a, *supra,* since that section makes a difference in cost of $25 to any person who has failed to return his license, registration receipts and license plates as requested. In this connection, the appellant refers to the language in 8-761, *supra,* to the effect that

8-761, *supra,* shall be operative *only where no penalty is otherwise provided* in the act.

The substance of the appellant's argument is that the $25 additional fee provided in 8-760a, *supra,* is a penalty within the contemplation of the language in 8-761, *supra.*

The question therefore posed is whether 8-760a, *supra,* contains an exclusive penalty for refusal to surrender the operator's license, registration and license plates, or whether such refusal constitutes a misdemeanor under the provisions of 8-761, *supra.*

The trial court held the categorical answer to the question lies in the legislative history of the two sections, noting that 8-761, *supra,* was a part of the comprehensive act adopted in 1957, long prior to the enactment of 8-760a, *supra,* which was adopted in 1963. On this point the trial court said:

"Section 8-760a was adopted in 1963 and closes with the statement: 'This section shall be and construed as a part of *and supplemental to* the motor vehicle safety responsibility act.' It is not actually a penalty section at all; it simply imposes an additional fee of twenty-five dollars for a new driver's license if the licensee has refused to surrender his previous license, registration and license plates. Observe that acceptance of defendant's contention would mean that unless the person who has flouted the law desired to obtain a new driver's license there would be absolutely nothing that the state could do to punish him for his infraction. Such cannot be the law.

"The necessary conclusion is that section 8-760a does what it says it does, *supplements* the general act, and accomplishes that by making a new driver's license cost more. This leaves in effect the pre-existing penalty clause of 8-761 and constitutes the violation a misdemeanor."

Upon consideration of this question by the court the majority of its members are of the opinion and construe the additional fee of $25 in 8-760a, *supra,* to be an administrative cost imposed upon one whose license has been suspended, and who fails to immediately return his license and registration to the Department as required by 8-760, *supra.*

The term "penalty" has been variously defined by the courts of last resort in this country. It is applied in the sense of punishment for crime. It is also a sum of money which the law exacts the payment of by way of punishment for doing some act which is prohibited, or omitting to do some act which is required to be done. (31A Words and Phrases, pp. 417, 476 [Permanent Edition].)

As used in 8-761, *supra,* which imposes criminal liability, the term "penalty" was undoubtedly used by the legislature to denote punishment.

The foregoing construction of the above sections of the act makes the violation of 8-760, *supra,* by the appellant a misdemeanor under 8-761, *supra.*

The appellant next contends the trial court erred in finding that 8-760, *supra,* is constitutional and does not deprive the appellant of his property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States.

While the appellant recognizes the generally accepted theory that a license to drive is a privilege, which can be suspended by the state for good reason, he argues it is most difficult to understand how the use of personal property can be denominated a privilege, which can be denied arbitrarily by ministerial act of an administrative department of the state without fault or violation of any law by the owner of such property. He contends it is even harder to explain how an administrative department could further require the giving up of certain items of personal property by the owner thereof by simple administrative order based on an event beyond the control of the owner of the property.

In this connection, the appellant relies upon the logic in *People v. Nothaus,* 147 Colo. 210, 363 P. 2d 180 (1961). There the defendant drove a motor vehicle while under a suspension order issued by the Motor Vehicle Department of the state of Colorado, the suspension order having been issued for refusal to deposit security under provisions similar to those in the Kansas law. The Colorado court said:

". . . This suspension is mandatory. It is not conditioned upon any report being made by the operator whose license is suspended. It is not conditioned upon a criminal trial and a finding of guilt. This suspension must be made within sixty days after the receipt of 'a report'—any report, a true one, a false one, an unsworn one, the report of a bystander or the hearsay report of any kind by any person. A report such as is required by 13-7-6 (viz: by one involved in the accident) is *not* specified." (p. 213.)

In the opinion the court found that a motor vehicle was property within the due process clause of the Constitution. It said:

". . . A motor vehicle is property and a person cannot be deprived of property without due process of law. The term property, within the meaning of the due process clause, includes the right to make full use of the property which one has the inalienable right to acquire.

"Every citizen has an inalienable right to make use of the public highways of the state; every citizen has full freedom to travel from place to place in the enjoyment of life and liberty. The limitations which may be placed upon this inherent right of the citizen must be based upon a proper exercise of the police

power of the state in the protection of the public health, safety and welfare. Any unreasonable restraint upon the freedom of the individual to make use of the public highways cannot be sustained. Regulations imposed upon the right of the citizen to make use of the public highways must have a fair relationship to the protection of the public safety in order to be valid." (p. 214.)

The Colorado court recognized the power of the state to regulate traffic for the public safety, but said when a citizen meets the standards defined in a proper exercise of the police power, he has the right to continue the full enjoyment of that right until by due process of law it has been established that by reason of abuse of the right, or other just cause, it is reasonably necessary in the interest of public safety to deprive him of the right to drive a motor vehicle on the highways. It said such action cannot be taken without notice to the party affected and an opportunity to be heard; and whether a constitutionally guaranteed property right can be denied for some justifiable reason, is essentially a judicial question. It also said the safety responsibility law requiring deposit of security *after an accident* does not protect the public health, safety or welfare and denies the operator due process of law and is unconstitutional. It said the act was designed and intended to bring about the posting of security for the payment of a private obligation without the slightest indication that any legal obligation exists on the part of any person; that the public gets no protection whatever from the deposit of such security.

The Colorado court held the provisions of the Colorado act requiring the suspension of a driver's license under statutory provisions similar to those of the Kansas act unconstitutional and invalid.

It may be noted the Colorado decision (two justices dissenting) represents the minority view and is premised upon the proposition that a right to use a motor vehicle upon a public highway is a property right, while Kansas has always regarded a license to drive a motor vehicle upon a public highway to be a privilege. In *Agee v. Kansas Highway Commission,* supra, it was said:

"Finally, hardship resulting from the suspension of a license, or of a vehicle registration, constitutes no defense to an order suspending either one or both of them. It is established law that the right to operate a motor vehicle upon public streets and highways is not a natural right, but a privilege, subject to reasonable regulation in the public interest. (*Lee v. State,* 187 Kan. 566, 358 P. 2d 765; *Marbut v. Motor Vehicle Department,* 194 Kan. 620, 400 P. 2d 982; *Larr v. Secretary of State,* supra [317 Mich. 121, 26 N. W. 2d 872].) Being a privilege, the right of operation is subject to suspension when the public interest and welfare reasonably requires. Personal hardship has no bearing on the matter. . . ." (p. 180.)

For other cases holding the right to operate a motor vehicle upon public streets is not a natural right, but a privilege, subject to reasonable regulation in the public interest see, *Lee v. State,* 187 Kan. 566, 358 P. 2d 765; *Marbut v. Motor Vehicle Department,* 194 Kan. 620, 400 P. 2d 982; *Doyle v. Kahl,* 242 Iowa 153, 46 N. W. 2d 52 (1951); and *Heart v. Fletcher,* 53 N. Y. S. 2d 369, 184 Misc. 659 (1945).

Suspension of a driver's license or of the registration of a motor vehicle is not the taking of property. It deprives the operator or owner of the automobile for a limited time and on reasonable conditions of the privilege of driving or operating the motor vehicle on the public highways. The suspension can be terminated by depositing security, by procuring a release from liability, or by filing a written agreement with respect to claims for bodily injury to, or death of, any person, or property damage arising from such accident, which may provide for payment in installments. (See, K. S. A. 8-731 and 8-732.) Inconvenience is imposed upon the operator who is not at fault, but it is so imposed in the interest of prompt action for the accomplishment of the purpose of the act in the exercise of the police power. (*Gillaspie v. Dept. of Public Safety,* 152 Tex. 459, 467, 259 S. W. 2d 177 [1953], cert. den. 347 U. S. 933, 98 L. Ed. 1084, 74 S. Ct. 625.)

The payment by the appellant of the required fees upon the issuance to him of the operator's license and registration certificate did not convert the privilege granted into a property right of which he might not be deprived without a notice and hearing, *i. e.,* due process of law. The privilege was granted to him under certain specified conditions, subject to all laws pertaining thereto at the time the same was issued or may later be enacted, if otherwise valid. (*Reitz v. Mealey,* 314 U. S. 33, 86 L. Ed. 21, 61 S. Ct. 24 [1941]; *Doyle v. Kahl,* supra; and *Heart v. Fletcher,* supra.)

It seems clear the legislature may require, as a condition to the right of operating a motor vehicle, the procurement of insurance or the furnishing of other proof of financial responsibility. (*Gillaspie v. Dept. of Public Safety,* supra.)

If the legislature may require proof of financial responsibility in advance of the issuance of a driver's license, there seems to be no valid reason why it could not require the same thing of an operator who has been involved in an accident, as the condition upon which he will be permitted to retain his license. ( *Gillaspie v. Dept. of Public Safety,* supra.)

The present direct attack upon the constitutionality of the act is limited to the suspension of the operator's license, vehicle registration and license plates under the Motor Vehicle Safety Responsibility Act, and the resultant criminal prosecution for failure to return to the Motor Vehicle Department the license or registration of the appellant immediately upon being notified of the suspension. The appellant argues that after the suspension by the Motor Vehicle Department of one's operator's license or vehicle registration, the driver or owner of the vehicle may be prosecuted for driving or using the same without such licenses. This punishment, the appellant argues, is sufficient to enforce the suspension. He says it cannot be presumed that if the items of personal property evidencing license and registration are not returned to the Department, the owner or operator will use them to violate the law. He argues the state insists the appellant has become a criminal for failure to give up items of personal property which he owns and for which he has paid. This was occasioned by the demand of a state administrative agency.

To clarify his point, the appellant asks, "For what kind of crime is the appellant being prosecuted?" The appellant argues he is accused, found guilty and sentenced to imprisonment, and the payment of a fine for no commission of an offensive act, but for an omission—refusing to comply with the order of an administrative department of the state made without any judicial determination of any kind. He argues the legislature cannot render that criminal which in its very nature is innocent and essentially nonculpable, nor may it declare an individual guilty or presumptively guilty of a crime. He argues the stipulated facts disclose the Department has not directed a peace officer to secure possession of the articles sought, as required by 8-760, *supra,* but simply sent two investigators to pick up the items.

An extended annotation considering the question of the validity of the financial responsibility acts in the United States appears in 35 A. L. R. 2d 1011. This annotation supersedes an earlier one in 115 A. L. R. 1376.

It may generally be said the validity of financial responsibility acts, which by now are common enactments in the majority of the states of the United States, has been consistently upheld against constitutional and other objections, of all varieties, including the claim that they conflict with the Federal Bankruptcy Act. This conclusion seems to rest on the fact that the state, in the exercise

of its police power, may make reasonable regulations as to the use of its highways, and that since financial responsibility acts aim to promote safety on the highways by protecting the users against financially irresponsible persons, they are reasonable regulations within such power.

In *Hadden v. Aitken*, 156 Neb. 215, 55 N. W. 2d 620 (1952), the Supreme Court of Nebraska in speaking of the state's automobile financial responsibility laws said:

"The purpose of this Act is to protect the public on the highways against the operation of motor vehicles by financially irresponsible persons and thus is referable to the police power of the state. This power is inherent in every sovereignty and permits the enactment of laws, within constitutional limits, to promote the general welfare of its citizens. Therefore, in the interests of the public the state may make and enforce regulations reasonably calculated to promote care on the part of all who use its highways." (p. 221.)

The Supreme Court of the United States in *Reitz v. Mealey*, supra, recognized the powers of the state to adopt appropriate means to insure competence and care on the part of its licensees to protect others using the highway and held it to be consonant with due process. There the vehicle and traffic law of New York, as originally enacted, provided that one against whom a judgment was rendered for injury resulting from the operation of a motor vehicle, and who failed to pay it within a designated time, should have his license and registration suspended for three years, unless in the meantime the judgment was satisfied or discharged.

On the facts here presented the appellant's specifications of error indicate he is making a broadside due process attack, contending the Motor Vehicle Safety Responsibility Act goes beyond the proper exercise of the state's police power.

A similar attack was made by a Wisconsin driver in *State v. Stehlek*, 262 Wis. 642, 56 N. W. 2d 514 (1953), on facts almost identical to those in the case at bar with one exception; namely, the Wisconsin statute imposing criminal liability differs substantially from the corresponding section of the Kansas statute. (8-761, *supra.*) The Wisconsin section prescribing penalties (Wisconsin Statutes Annotated, Volume 14, § 85.09 [32]) reads:

"(*a*) Any person whose license or registration or nonresident's operating privileges has been suspended or revoked under this chapter and who, during such suspension or revocation or thereafter but before filing proof of financial responsibility drives any motor vehicle upon any highway or knowingly permits any motor vehicle owned by such person to be operated by another upon any highway, except as permitted under this section, shall be deemed guilty of a

misdemeanor and be fined not less than $10 nor more than $500 or imprisoned not exceeding 6 months, or both.

"(*b*) Any person willfully failing to return license or registration as required in subsection (31) shall be deemed guilty of a misdemeanor and be fined not more than $500 or imprisoned not to exceed 30 days, or both.

"(*c*) Any person who shall forge or, without authority, sign any notice provided for under subsection (5) that a policy or bond is in effect, or any evidence of proof of financial responsibility, or who files or offers for filing any such notice or evidence of proof knowing or having reason to believe that it is forged or signed without authority, shall be deemed guilty of a misdemeanor and be fined not more than $1,000 or imprisoned not more than one year, or both.

"(*d*) Any person who shall violate any provision of this section for which no penalty is otherwise provided shall be fined not more than $500 or imprisoned not more than 90 days, or both."

Subsection (31), to which reference is made in (*b*) above, is identical to the corresponding section of the Kansas act, 8-760, *supra*. The Wisconsin act has no section corresponding to 8-760a, *supra*.

As in the instant case, the Wisconsin driver was involved in a collision, and the commissioner issued a notice of suspension of his driver's license, if he failed to comply with the Motor Vehicle Safety Responsibility Act by posting security. The driver failed to post the required security, and an order of suspension of his operator's license was made and served on him by mail. He refused and failed to surrender his driver's license pursuant to the notice and was thereupon prosecuted in the district court for unlawfully and willfully failing and refusing to return his operator's license to the Motor Vehicle Department after suspension thereof, in violation of Section 85.09 (31). The trial court held the act unconstitutional and dismissed the action. The Supreme Court of Wisconsin on appeal reversed.

The Wisconsin court reasoned that by the weight of authority driving an automobile upon public highways is a privilege, and not a property right; and is subject to reasonable regulation under the police power in the interest of public safety and welfare. It quoted from a leading case involving the financial responsibility law (*Rosenblum v. Griffin*, 89 N. H. 314, 197 Atl. 701, 115 A. L. R. 1367 [1938]) as follows:

" ' ". . . the operation of an automobile upon the public highways is not a right but only a privilege which the state may grant or withhold at pleasure. (*Commonwealth v. Kingsbury*, 199 Mass. 542); and . . . what the state may withhold, it may grant upon condition. One condition is that the operator must, in case of accident, furnish the demanded information. This condition is binding upon all who accept the privilege. 'The statute confers a privilege which

the citizen is at liberty to accept by becoming a licensee, or not, as he pleases. Having accepted the privilege, he cannot object to any conditions which have been attached thereto by a grantor with power to entirely withhold the privilege.' *State v. Corron,* 73 N. H. 434, 445." ' " (p. 646.)

In *Stehlek* the driver asserted there was no provision in the Wisconsin statute for a court review of the proceedings by the commissioner, excepting only that if the person notified succeeds in obtaining a judgment of the court absolving him from negligence he automatically becomes entitled to reinstatement.

The court said when the conditions imposed by the legislature, requiring the commissioner to suspend a license, have been fulfilled by acts or omissions of the licensee, the commissioner's duty to suspend is mandatory. His function in carrying out the will and mandate of the legislature is purely ministerial. The legislature has factually determined and expressed that determination in the statute itself, as to when and under what circumstances a license shall be suspended. There is then no need for reviewing the commissioner's acts, unless he has deviated from the terms of the statute. However, in those particulars where the commissioner exercises some measure of discretion, there is provision for reviewing his acts. For example, the amount of security demanded by the commissioner is subject to review by the court under the statute. In the opinion the Wisconsin court said:

"Any appropriate means adopted by the legislature to insure competence and care on the part of its licensees and to protect others using the highways is consonant with due process. Suspension of a license without a prior hearing, but subject to subsequent judicial review, does not violate *due process* if reasonably justified by a compelling public interest. Respondent contends that sec. 85.09 (5) (2), Stats., is unconstitutional in that it fails to provide respondent with *due process of law,* as guaranteed to him and all persons by the provisions in secs. 1, 9, art. I of the constitution of Wisconsin. It seems to be counsel's contention that such due process can be afforded only through the agency of a court of law, and that the commissioner's act in determining the amount of security required to be deposited is a judicial act. In *Ekern v. McGovern,* 154 Wis. 157, 142 N. W. 595, this court gave a fundamental exposition of due process in these words (p. 240):

" 'What is due process of law? There is nothing very technical about it when we view the subject broadly. Due process of law means, in brief, the law of the land—including the unwritten law. It is, simply, that which must be followed in depriving any one of anything which is his to enjoy until he shall have been divested thereof by and according to the law of his country. Whether the proceedings relate to liberty or property, in the technical sense, and be of a strictly judicial nature, or to mere privilege, immunity, status, or anything else of value, which commonly are of a quasi-judicial nature, incidental

to or as a part of administrative authority, and reviewable by courts as to jurisdictional matters, or, of a purely ministerial nature where the thing is a mere creature of the law granted upon condition of being so dealt with, due process of law pervades and rules them all.'

"Statutes enacted under the police power which dispense with hearings preliminary to suspension of licenses are not unique or peculiar to the field of drivers' licenses. The deliberate omission of hearing procedure preliminary to the suspension of a license in the field of motor vehicle operators' licenses does not offend the due-process clauses of the United States and state constitutions and is neither new nor different from other licensing fields subject to regulation under the police power. . . ." (pp. 649, 650.)

Generally, an exercise of the state police power is valid insofar as it is reasonably necessary and appropriate to the promotion of the public welfare. The theory upon which the Motor Vehicle Safety Responsibility Acts are upheld, which make no provision for a hearing prior to the suspension of a driver's license, is that much harm may come to citizens of the state unless they are speedily protected from irresponsible drivers.

In respect to the appellant's due process attack, the Supreme Court of California in *Escobedo v. State of California,* 35 C. 2d 870, 222 P. 2d 1 (1950), said:

". . . it is . . . well established . . . that usage of the highways is subject to reasonable regulation for the public good. In this connection, the constitutionality of various types of financial responsibility laws has been often upheld against contentions that they violated the due process clause of the Fourteenth Amendment. 'The use of the public highways by motor vehicles, with its constant dangers, renders the reasonableness and necessity of regulation apparent. The universal practice is to register ownership of automobiles and to license their drivers. Any appropriate means adopted by the states to insure competence and care on the part of its licensees and to protect others using the highway is consonant with due process.' (*Reitz v. Mealey* (1941), 314 U. S. 33, 36 [62 S. Ct. 24, 86 L. Ed. 21, 24]; see, also, *State v. Price* (1937), 49 Ariz. 19, 26 [63 P. 2d 653, 108 A. L. R. 1156]; *Surtman v. Secretary of State* (1944), 309 Mich. 270 [15 N. W. 2d 471, 474].)

"The state, in the exercise of its police power, could constitutionally have required deposit of security by owners of all vehicles as a condition to licensing them. (*Opinion of the Justices, In re* (1925), 81 N. H. 566 [129 A. 117, 39 A. L. R. 1023]; *Opinion of the Justices, In re* (1925), 251 Mass. 569 [147 N. E. 681]; *Brest v. Commissioner of Insurance* (1930), 270 Mass. 7 [169 N. E. 657]; *Ex parte Poresky* (1933), 290 U. S. 30 [54 S. Ct. 3, 78 L. Ed. 152].) Instead, the state chose to allow financially irresponsible licensed operators to drive until they became involved in an accident with the consequences described in sections 419 and 420 of the Vehicle Code and their financial irresponsibility was thus brought to the attention of the department, and then to require suspension of their licenses.

"Suspension of the license without prior hearing but subject to subsequent judicial review did not violate due process if reasonably justified by a compelling public interest. (*Bourjois v. Chapman* (1937), 301 U. S. 183, 189 [57 S. Ct. 691, 81 L. Ed. 1027, 1032]; see also *Phillips v. Commissioner of Internal Rev.* (1931), 283 U. S. 589, 596-597 [51 S. Ct. 608, 75 L. Ed. 1289].) The compelling public interest here appears from the obvious carelessness and financial irresponsibility of a substantial number of drivers and from the following allegations of the petition: There are 3,879,931 motor vehicles registered in California. During the first four months after the effective date of the law now under consideration, 19,808 persons were ordered by the department to establish that they were adequately insured or deposit security. More than 6,567 operators' licenses were suspended under the applicable law, and more than 1,300 'citations per month for suspension of license' were issued by the department. In these circumstances it is apparent that to require a hearing in every case before suspension of a license would have substantially burdened and delayed if not defeated the operation of the law. . . ." (pp. 876, 877.)

The contention that financial responsibility laws unconstitutionally discriminate against the poor was effectively considered in *Escobedo v. State of California,* supra, where the court said.

"Financial responsibility laws such as this do not unconstitutionally discriminate against the poor. (See *Watson v. Division of Motor Vehicles* (1931), 212 Cal. 279, 284 [298 P. 481]; *Rosenblum v. Griffin* (1938), 89 N. H. 314, 319 [197 A. 701, 115 A. L. R. 1967].) Those damaged by the negligence of indigent drivers may be indigent also, and as little able as the drivers to bear the cost of such negligence. The fallacy of the argument that the law favored the rich over the poor 'lies in the failure to distinguish between equality of opportunity and ability to take advantage of the opportunity which is offered to all. The equality of the Constitution is the equality of right, and not of enjoyment.' (*Watson v. Division of Motor Vehicles* (1931), supra, p. 284 of 212 Cal.) Those who cannot afford to possess automobiles are as little able to enjoy the opportunity of driving on the public highways as those who cannot afford insurance or security." (p. 878.)

In *Roseblum v. Griffin,* 89 N. H. 314, 197 Atl. 701, 115 A. L. R. 1367 (1938), the court said:

"So far as classification is here involved, no one is unconstitutionally denied the privilege of the use of the highways with a motor vehicle. The terms and conditions of the privilege are applicable to all who avail themselves of it. They may be unfair and unreasonable, in fact, but they are not invalid. There is equality of treatment. Every licensee takes his license on the condition that if he meets with an accident while operating a car, his further right to operate shall depend upon his having or furnishing security for any liability arising out of the accident or any future accident.

"Classification between those who may and who may not have the privilege of highway use of motor vehicles must be reasonable, but the privilege itself need not be; nor does the classification based upon an accident come within the

operative effect of the Constitution, since it is one to which the licensee voluntarily consents as a condition of his acceptance of the license. There is no discrimination. All who fail to comply with specified terms suffer specified consequences. Meeting the terms, they avoid the consequences. The terms may be that events and occurrences, as well as conduct, shall provoke the consequences.

"Inability to meet the terms may be a misfortune, and so may be inability to become a licensee. Lack of resources to maintain and drive a car and their lack to own a car do not stand differently. What may or may not be afforded is not a matter of constitutional concern in respect to equality and discrimination. Equality of right implies no equality of ability or means." (p. 319.)

The court in conclusion finds the reasoning applied by the foregoing authorities upholding motor vehicle financial responsibility laws, similar to the Kansas Motor Vehicle Safety Responsibility Act, has persuasive force. Accordingly, it is held the Motor Vehicle Safety Responsibility Act which requires the Department (the Vehicle Department of the State Highway Commission—K. S. A. 8-722) to summarily suspend the license of a financially irresponsible driver involved in an accident, who falls within the act and fails to deposit security as required pursuant to K. S. A. 8-726, subsequent to the accident, and to summarily suspend the registration of the owner of a motor vehicle involved in such accident pursuant to K. S. A. 8-727, is a valid exercise of the police power of the state and does not violate the due process and equal protection clauses of the Federal and State Constitutions. The further provisions in K. S. A. 8-760, requiring any person whose license or registration has been suspended to immediately return his license and registration to the Department, and the provisions of 8-761, *supra,* designed to enforce the act by imposing criminal liability upon an offender, are an appropriate means adopted by the legislature to enforce the act and to insure competence and care on the part of licensees operating motor vehicles and to protect others using the highways. These provisions do not deprive such person of property without due process of law.

Under the provisions of 8-760, *supra,* the offense committed by the appellant was complete upon his failure to immediately return his license and registration to the Department upon receiving notice of the order of suspension. The appellant's later refusal to surrender his license or registration upon demand by agents of the Department occurred after the offense was committed.

On the facts in this case the appellant owned only one motor

vehicle, and the suspension order involved only the operator's license of the appellant and the registration and license plates of the vehicle which he owned, and which was involved in the accident. The foregoing opinion concerning the Motor Vehicle Safety Responsibility Act is limited to these facts; that is, the ownership of *one vehicle* driven by the owner who was involved in the accident. (See, K. S. A. 8-727 [2] and 8-760a.)

The judgment of the lower court is affirmed.

SCHROEDER, J., dissenting: While I agree with the decision of the court upholding the constitutionality of the Motor Vehicle Safety Responsibility Act, I do not think it necessary to a decision in the instant case.

It is a well-known rule of statutory construction that criminal statutes must be strictly construed. That is, where ambiguity or uncertainty exists, they must be construed against the state.

The provisions of K. S. A. 8-761 are ambiguous in that they fail to specifically denounce those acts which are made punishable by its provisions. An example of a penalty section in a Motor Vehicle Safety Responsibility Act which is clear with respect to the facts in this case is Wisconsin Statutes Annotated, Volume 14, § 85.09 (32), quoted in the court's opinion.

First, the provisions of 8-761, *supra*, state that any person who shall violate any provision of this act *for which no other penalty is provided* shall be fined, etc. The term "penalty" has been used in America in various senses. In one sense the term "penalty" denotes money recoverable by virtue of a statute imposing a payment by way of punishment. (*United States v. Four Hundred And Twenty Dollars*, 162 Fed. 803, 805 [S. D. Ala. 1908], citing Black's Law Dictionary.)

The provisions of K. S. A. 8-760a provide for an additional payment of $25 to the Motor Vehicle Department for one who fails to immediately return his license and registration to the Department upon receiving notice of an order that his license or registration has been suspended in accordance with the provisions of K. S. A. 8-760. Section 8-760a, *supra*, specifically states, in view of its enactment after the Motor Vehicle Safety Responsibility Act, that the section shall be construed *as a part of* and supplemental to the Motor Vehicle Safety Responsibility Act.

It is improper to emphasize the expression "supplemental to" and ignore the expression "as a part of." Again, keeping in mind

that a criminal statute must be strictly construed, the appellant is entitled to have 8-760a, *supra*, construed *as a part of* the Motor Vehicle Safety Responsibility Act and not as supplemental to it insofar as the instant action is concerned.

The $25 additional fee falls within the definition of penalty used in 8-761, *supra*. This is fortified by the fact that the legislature specifically provided in 8-760a, *supra*, that "All fees collected by the motor vehicle department under the provisions of this section shall be paid into the state treasury and the state treasurer shall credit the same to the state highway fund." Customarily, when fines and penalties are collected by an agency of the state or a court, the legislature prescribes what shall be done with the money. If this were actually an administrative fee for the additional expense of administering the act, the legislature would have made no provision for the disposition of the $25 collected.

The only apparent reason the legislature could have had for enacting 8-760a, *supra*, was to impose a penalty of $25 upon a person failing to comply with 8-760, *supra*. This subsequent section of the act retains the same number as 8-760, to which it refers, with an "a" added. (8-760a, *supra*.)

The argument that the appellant could avoid the $25 penalty by refusing to reapply for a license is pure sophistry. If this were the appellant's choice, it would be tantamount to a permanent revocation of his driver's license by the Department, which in modern times can be ignored as an alternative choice. The driving of motor vehicles as a means of transportation in our modern economy, particularly one who resides in a rural area such as the appellant, is a necessity of life.

Second, there is no language in 8-760, *supra*, which makes the failure to immediately return a license and registration to the Department, where an order of suspension has been issued, unlawful. Furthermore, nowhere in either 8-760, *supra*, or 8-761, *supra*, does it require that the failure to surrender be a willful act on the part of one whose driver's license has been suspended. Thus, a criminal charge that the appellant *unlawfully* and *willfully* failed to surrender his operator's license and motor vehicle registration receipt would require the addition of these words to the sections of the statute.

From the language in 8-760, *supra*, it would appear that one who fails to immediately return his license and registration to the De-

partment, upon receiving notice of an order of suspension, would be subjected *to a demand from a peace officer* as a condition precedent to any prosecution under 8-761, *supra,* in the absence of more specific language as found in the Wisconsin statute. This conclusion is compelled by a strict construction of the statute imposing criminal liability.

In the instant case the Motor Vehicle Department failed to comply with 8-760, *supra,* in that no peace officer was ever sent to secure possession of the appellant's driver's license or automobile registration receipt and return the same to the Department.

It is respectfully submitted the conviction of the appellant should be set aside as invalid under the facts of this case. Strictly construing 8-761, *supra,* on the facts in this case, the appellant was not subject to criminal prosecution under this section of the Motor Vehicle Safety Responsibility Act.

KAUL and FROMME, JJ., join in the foregoing dissent.