491 F.2d 177
 Joan NICHOLS, Surviving Wife and Next of Ken of Raymond L.
Nichols, Deceased, Plaintiff-Appellee,
v.
Herbert A. MARSHALL, Administrator of the Estate of Frank W.
Frombaugh, Deceased, Defendant-Appellant, and
Allstate Insurance Company, a
corporation, Garnishee-Appellant.
 No. 73-1423.
 United States Court of Appeals, Tenth Circuit.
 Submitted Nov. 14, 1973.
Decided Feb. 8, 1974.
 
 John E. Shamberg, Kansas City, Kan. (Charles S. Schnider, Lynn R. Johnson, Kansas City, Kan. and Clearly, Krigel, Nee & Teasdale, Kansas City, Mo., on the brief), for plaintiff-appellee.
 Frank Saunders, Jr., of Wallace, Saunders, Austin, Allen, Brown & Enochs, Overland Park, Kan., for defendant-appellant and garnishee-appellant.
 Before LEWIS, Chief Judge, and HOLLOWAY and McWILLIAMS, Circuit judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 Joan Nichols, the surviving wife of Raymond L. Nichols, brought a wrongful death action against Herbert A. Marshall, the administrator of the estate of Frank W. Frombaugh, in the United States District Court for the District of Kansas. Frombaugh, Raymond Nichols and the latter's mother-in-law were all killed as the result of an automobile collision of tragic proportions on the Kansas Turnpike. Jurisdiction was based on diversity, Joan Nichols, as well as her deceased husband at the time of his death, being a citizen and resident of Missouri and Frank Frombaugh at the time of his death having been a citizen and resident of Shawnee County in the state of Kansas. Trial by jury resulted in the entry of a judgment in favor of Joan Nichols and against Marshall, the administrator, in the sum of $37,550.43. No appeal from that judgment was taken.
 
 
 2
 Thereafter, Joan Nichols instituted garnishment proceedings against Allstate Insurance Company, said company having issued an automobile liability insurance policy to Frank Frombaugh which was in force and effect as of the date of the accident here in question. Allstate was served with a garnishee summons, and in due time filed its answer. In its answer, Allstate admitted the existence of a policy of insurance having policy limits of $100,000 for each person injured and $300,000 for all injuries sustained in any one accident in which its insured, Frank Frombaugh, was involved. However, it was the basic position of Allstate, as set forth in its garnishee answer, that the insurance policy and any proceeds collectible thereunder were a part of the probate proceedings then pending in the probate court of Shawnee County in Kansas and not subject to garnishment in a federal district court proceeding.
 
 
 3
 In this general regard, Allstate further alleged in its answer that the probate court of Shawnee County not having ordered Marshall to satisfy the judgment entered in the wrongful death action in the federal district court, the latter was without jurisdiction over the subject matter, i.e., the proceeds obtainable under the insurance policy, and was without jurisdiction to enter a garnishee judgment against Allstate. Allstate suggested, alternatively, that the garnishment proceeding in the federal court be stayed until such time as the probate proceedings were concluded. The federal disteict court declined to stay the garnishment proceedings and proceeded to hear the matter on its merits. Such hearing resulted in a judgment in favor of Joan Nichols and against Allstate in a total amount of $39,094.15. Allstate now appeals, with Marshall, the administrator, being also designated as an appellant. We affirm. Some background material must be developed if the issue here involved is to be viewed in context.
 
 
 4
 This case arises out of an accident occurring on the Kansas Turnpike on August 10, 1969, wherein Frank Frombaugh was the driver of one vehicle and the Nichols family was riding in the other vehicle. Frombaugh, a citizen and resident of Shawnee County, in Kansas, was killed in the accident. Raymond Nichols was also killed as a result of the collision, as was a Mrs. Elva L. Brockman, the mother of Joan Nichols, who was also an occupant of the Nichols vehicle. Joan Nichols herself suffered severe personal injuries. The two Nichols children were also in the car, but they somehow escaped serious injury. The Nichols family were citizens and residents of Missouri, though Mrs. Brockman, Joan's mother, was a citizen and resident of Kansas.
 
 
 5
 On November 26, 1969, the attorneys for the Nichols family petitioned the probate court of Shawnee County, Kansas, to open an estate for Frank Frombaugh, and to appoint an administrator. In that petition, Joan Nichols, as the petitioner, alleged that she was a creditor of the estate by virtue of her claim for personal injuries and damages arising out of the automobile accident of August 10, 1969. An affidavit of counsel filed in support of the petition stated that the only known asset of the estate was the liability insurance policy issued Frombaugh by Allstate. On January 21, 1970, the probate court of Shawnee County ordered an estate opened and appointed one Herbert Marshall as administrator.
 
 
 6
 Claims were filed in the probate proceedings for the wrongful death and the survival action of Mrs. Elva Brockman, which claims, pursuant to Kansas probate practice, were transferred to the state district court of Shawnee County, in Kansas, for trial. These claims were ultimately settled by representatives of Allstate for $38,063.00. This settlement, incidentally, we are advised, was effected while the claims were pending in the state district court without resort to the probate proceedings in Shawnee County. Such may perhaps be illustrative of the correct Kansas procedure in a situation of the type with which we are here concerned.
 
 
 7
 On February 20, 1970, the following three separate actions were instituted in the United States District Court for the District of Kansas: (1) the survival action of Raymond Nichols (#3102); (2) the wrongful death action brought by Joan Nichols (#3103), which is the action in which the present garnishment proceeding was later brought; and (3) the personal injury action of Joan Nichols (#3104). All actions named Marshall, as administrator, as the defendant. These three cases were consolidated for trial. Upon, trial, liability was admitted, and the only issue submitted to the jury was the question of damages. The jury returned the following dollar verdicts: (1) $78,095.00 in the survival action (#3102); (2) $37,550.43 in the wrongful death action (#3103); and (3) $154,375.15 in the personal injury action (#3104), and appropriate judgments were entered thereon. The judgments entered in the survival action (#3102) and the personal injury action (#3104) were appealed and affirmed by us in Nichols v. Marshall, 486 F.2d 791 (10th Cir. 1973). The issues in that consolidated appeal related to the damages fixed by the jury, and do not relate to the precise issue posed in the present appeal. As indicated, the judgment entered in the wrongful death action (#3103) was not appealed.
 
 
 8
 Before discussing the garnishment proceeding brought in the wrongful death action (#3103), which is the subject matter of the present controversy, we would first review the status of the proceedings in the probate court of Shawnee County, in Kansas. As above mentioned, Joan Nichols filed a petition to open an estate for Frank Frombaugh on November 26, 1969, and an estate was thus opened on January 21, 1970. On October 23, 1970, the time for filing a claim against the estate of Frank Frombaugh in the probate court of Shawnee County, in Kansas, expired. K.S.A. 59-2239. On December 2, 1970, counsel for the plaintiffs in the three actions then pending in the federal district court filed in the probate court a 'Petition for Allowance of Amended Claim,' seeking to relate the amended claim, which was based on the several claims asserted in the three pending federal court actions, back to the date of the original petition to open an estate, namely, November 26, 1969. Over objection, this petition for allowance of an amended claim was granted. On appeal to the district court for Shawnee County, the ruling of the probate court was affirmed. A further appeal of this matter to the Kansas Supreme Court was later dismissed by that court. There is disagreement between counsel as to whether the dismissal by the Kansas Supreme Court was on the merits, or because the ruling appealed from was only interlocutory. In view of our approach to this case, the grounds upon which the Kansas Supreme Court acted is not crucial.
 
 
 9
 It was in this general setting that Joan Nichols, in her wrongful death action, which had not been appealed, instituted garnishment proceedings, naming Allstate as the garnishee-defendant. As mentioned above, Allstate, by answer, contended that the insurance policy and any proceeds collectible thereunder were not subject to garnishment but were under the aegis of the probate court of Shawnee County, and that because the probate court had not ordered payment of the judgment entered in the wrongful death case, the federal district court was powerless to proceed to satisfy its judgment through garnishment and in any event should await action in the Kansas probate court. The trial court disagreed with this contention, and so do we.
 
 
 10
 As a starting point, it is agreed that the federal district court did have jurisdiction to entertain the wrongful death action brought by Joan Nichols against Marshall, the administrator of Frombaugh's estate. The general rule is a federal district court in a diversity case has the same jurisdiction as does the state court of general jurisdiction in the state where the federal district court is sitting. Holt v. King, 250 F.2d 671 (10th Cir. 1957), and Erwin v. Barrow, 217 F.2d 522 (10th Cir. 1954). We are advised that the present probate practice in Kansas permits the probate court, on request, to transfer to the state district court a disputed claim in excess of $500 for an original trial of the matter in the district court. K.S.A. 59-2402 (a) and (b). Prior to the enactment of the particular statute authorizing such transfer, a claim was first tried in the probate court, with the unsuccessful party then having the right to a trial de novo in the district court. That the Kansas district court had jurisdiction to hear a wrongful death action against the administrator of an estate is demonstrated by the fact that the wrongful death action of Mrs. Elva Brockman, Joan Nichols' mother, against Marshall, Frombaugh's administrator, was transferred from the probate court to the state district court for trial, where it was pending when settlement was effected. All of which is quite consistent with the landmark case of Waterman v. Canal-Louisiana Bank, 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80 (1909). In Waterman, it was held that a citizen of another state may establish in federal court a debt against an estate, but the debt, once established must then take its place and share of the estate as administered by the state probate court. Stated slightly differently, Waterman stands for the proposition that though a federal court may exercise jurisdiction and enter judgments binding on a claimant and the administrator of an estate, the federal court may not exercise dominion over assets in the estate which by state law are subject to the exclusive possession of the state probate court.
 
 
 11
 If we understand the position of Allstate, it is that though the federal district court had jurisdiction to entertain and render judgment in the wrongful death action brought by Joan Nichols against Marshall, as administrator, it had no jurisdiction to thereafter entertain a garnishment proceeding against it, Allstate, and that Joan Nichols' remedy is to now perfect her claim in the probate court of Shawnee County by exhibiting the judgment which she recovered in the federal district court proceeding and then seek allowance of her claim by an appropriate order of the probate court. Such would apparently be the approved procedure if the policy of automobile liability insurance issued Frombaugh by Allstate be truly an asset in Frombaugh's estate. However, and this is the nub of the entire case, counsel for Nichols contends that the automobile liability insurance policy with which we are here concerned is not truly an asset of Frombaugh's estate. It is Nichols' position that, because of the nature of the obligation created by the terms and provisions of the policy, the monies collectible under the policy inure to the benefit of Joan Nichols and Allstate is therefore subject to garnishment proceedings in the federal district court. We agree.
 
 
 12
 The only reported case drawn to our attention which bears directly on the narrow issue now before us is Schloegl v. Nardi, 92 Ill.App.2d 302, 234 N.E.2d 558 (1968), a case which we incidentally, find persuasive. Though the factual setting was a bit different, Schloegl did address itself directly to the question of whether a policy of automobile liability insurance is an asset of the estate of a deceased insured. In holding that such a policy was not an asset, as such, of the estate, the following pertinent comment was made:
 
 
 13
 Was the insurance policy an asset of the estate which had been administered and consequently is now no longer available to satisfy any judgment these plaintiffs might obtain? No. Section 172 of the Probate Act (Ill.Rev.Stat.1963, ch. 3, sec. 172) requires the administrator or executor to inventory the real or personal estate of the decedent. This policy was neither. It provided no funds for the payment of claims of general creditors of the estate. It was, in the language of the plaintiffs, a 'unique' asset. Insofar as it provided for indemnification from harm for judgments obtained, it protected the assets of the decedent. Within its limits and insuring clause it provided a potential fund for the satisfaction of any judgment obtained by a claimant asserting a timely claim under the general statute of limitations. It was, at best, an inchoate asset of the estate of no intrinsic value which would make it subject to administration or distribution as an 'asset' by the decedent's personal representative. The refund for unearned premium which the executors obtained had no effect upon any rights or obligations incurred by virtue of the existence of this insurance prior to the decedent's death.
 
 
 14
 The third-party beneficiary aspects of liability insurance contracts have been recognized by both the legislature and the courts. The legislature has provided that bankruptcy or insolvency of the insured shall not constitute a defense to the insurance carrier (Ill.Rev.Stat.1963, ch. 73, sec. 1000; Scott v. Freeport Motor Cas. Co., 392 Ill. 332, 64 N.E.2d 542 (1946)), that companies writing automobile casualty coverage shall provide certain minimum amounts of coverage, and also cover all persons using a vehicle with the express or limplied permission of the named insured. (Ill.Rev.Stat.1963, ch. 95 1/2, sec. 7-317.)
 
 
 15
 Section 7-317(f) of the Financial Responsibility Act (Ill.Rev.Stat.1963, ch. 95 1/2, sec. 7-317(f)) provides, in part, that no policy shall be cancelled or annulled by any agreement between the carrier and the insured after the insured has become responsible for loss or damage.
 
 The Supreme Court of Illinois has stated:
 
 16
 '. . . Under our statutes, . . . liability insurance is not merely a private matter for the sole knowledge of the carrier and the insured, but is also for the benefit of persons injured by the negligent operation of insured's motor vehicle. (Citing case.) . . ..' People ex rel. Terry v. Fisher, 12 Ill. 2d 231, 238, 145 N.Ed.2d 588, 592-593 (1957).
 
 
 17
 . . . . .
 
 
 18
 The concept of a liability insurance policy as a 'unique' inchoate asset of the decedent's estate finds support in prior Illinois cases. In Furst v. Brady, 375 Ill. 425, 31 N.E.2d 606, 133 A.L.R. 558 (1941), the existence of such a policy, issued by a company licensed to do business in Illinois, which insured a nonresident who had been involved in an auto accident in Illinois and subsequently died with no other assets in Illinois, was held to be sufficient to support the appointment of an administrator in Illinois for the nonresident in order to allow an injured party to assert an injury action against the decedent here in Illinois. That decision was not based upon the concept that the insurance policy was property of the decedent subject to ordinary administration, but was bottomed on the concept that the insuring clause provided the personal representative with a chose in action with a situs in Illinois which would ripen against the insurance company in the event of judgment against the administrator in the underlying personal injury action.
 
 
 19
 Our attention has not been directed to any Kansas decision which considers the question as to whether a policy of automobile liability insurance is, or is not, an asset in the estate of the deceased insured. However, our survey of Kansas law relating to the nature of the obligation of an insurer issuing automobile liability insurance policies would seem to be in accord with the rationale of Schloegl. Let us examine some of those authorities that indicate to us that Kansas would be in general agreement with the Scholegl rule.
 
 
 20
 In Kansas, as in Illinois, an automobile liability insurance policy does constitute such an 'estate' of a nonresident insured decedent as to justify the issuance of letters of administration and the appointment of an administrator of such estate in Kansas probate proceedings. In re Preston's Estate, 193 Kan. 145, 392 P.2d 922 (1964). However, such does not mean that monies recoverable under the terms of the automobile liability insurance policy must be recovered in the deceased insured's probate proceedings. In this regard, as was pointed out in Schloegl, though the existence of an automobile liability insurance policy is sufficient to open an estate for a nonresident insured, it does not follow that the 'insurance policy was property of the decedent subject to ordinary administration.' Instead, said the court in Schloegl, such right to open an estate based on the existence of an automobile liability insurance policy issued to the deceased 'was bottomed on the concept that the insuring clause provided the personal representative with a chose in action with a situs in Illinois which would ripen against the insurance company in the event of a judgment against the administrator in the underlying personal injury action.'
 
 
 21
 In Schloegl, the court recognized the third party beneficiary aspects of liability insurance contracts. So, too, we feel, does Kansas. For example, in Kansas, the right to operate a motor vehicle upon a public highway is not a natural right, but a privilege, subject to reasonable regulation in the public interest. State v. Finley, 198 Kan. 585, 426 P.2d 251 (1967). In such public interest Kansas has enacted the Motor Vehicle Safety Responsibility Act, K.S.A. 8-722 et seq., which Act, according to Finley, is designed to 'promote safety on the highways by protecting the users against financially irresponsible persons . . ..'
 
 
 22
 As is true with most safety responsibility laws, the Kansas Act provided that if the driver or owner of a vehicle involved in an accident coming within the scope of the Act has in effect at the time of the accident a policy of automobile liability insurance, then he need not demonstrate financial responsibility as otherwise required by the Act. K.S.A. 8-728. As concerns the general nature of such a policy of insurance, K.S.A. 8-750(f) provides as follows:
 
 
 23
 (f) Every motor-vehicle liability policy shall be subject to the following provisions which need not be contained therein: (1) The liability of the insurance carrier with respect to the insurance required by this act shall become absolute whenever injury or damage covered by said motor-vehicle liability policy occurs; said policy may not be canceled or annulled as to such liability by any agreement between the insurance carrier and the insured after the occurrence of the injury or damage; no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy. (2) The satisfaction by the insured of a judgment for such injury or damage shall not be a condition precedent to the right or duty of the insurance carrier to make payment on account of such injury or damage . . ..
 
 
 24
 Continuing, then, our comparison of Schloegl to Kansas law, in Schloegl mention was made that the Illinois legislature had provided that the bankruptcy or insolvency of the insured shall not constitute a defense to the insurance carrier. So, too, in Kansas, it has been held that an action does not abate when a defendant is discharged in bankruptcy where the defendant was insured against liability. Johnson v. Bondurant, 187 Kan. 637, 359 P.2d 861 (1961). We recognize that this particular matter is primarily governed by bankruptcy law, but it does afford another basis for comparison between Schloegl and Kansas law.
 
 
 25
 Under long standing garnishment law in Kansas, once judgment has entered, the judgment creditor then takes the place of the judgment debtor and may take that which the latter could enforce. Burlington & M.R.R. Co. v. Thompson, 31 Kan. 180, 1 P. 622 (1884). So, there is no doubt but that a judgment creditor in a typical personal injury case where the tort-feasor is alive, and not deceased, may proceed by garnishment against the tort-feasor's insurer to satisfy within policy limits the judgment obtained against the tortfeasor. And Kansas courts have gone a step farther and have held that a judgment creditor may proceed by garnishment against a tort-feasor's insurer for the unpaid balance of the judgment which is in excess of the policy limits where the insurer refused to settle within policy limits by virtue of negligence or bad faith, the courts holding that such claim sounds in contract and is subject to garnishment even though unliquidated. Gilley v. Farmer,207 Kan. 536, 485 P.2d 1284 (1971), and Bollinger v. Nuss, 202 Kan. 326, 449 P.2d 502 (1969).
 
 
 26
 This right to thus proceed by garnishment against the insurer for that portion of the judgment which is in excess of policy limits has been recognized, admittedly by way of dictum, where the original action was brought, as it was here, against the administrator of the estate of an insured who himself died in the accident which was the basis for the entire litigation. In re Estate of Lohse, 207 Kan. 36, 483 P.2d 1048 (1971). The Lohse case thus indicates to us that though the personal administrator of the estate of the deceased insured might himself have a cause of action against a decedent's insurer who negligently and in bad faith failed to settle within policy limits for the unpaid balance of a judgment, the judgment creditor himself has an independent right to thus proceed by garnishment against the insurer. So, if the judgment creditor himself may proceed by garnishment against the deceased's insurer for the unpaid balance of a judgment in excess of policy limits, it would seem to follow that he may also proceed by garnishment against the insurer for monies due that are within policy limits. The greater would seem to include the lesser.
 
 
 27
 Without further comparison of Kansas law to Illinois law, we are of the view that the Kansas courts, like the court in Schloegl, would conclude that the policy of insurance issued Frombaugh by Allstate, and more particularly the proceeds collectible thereunder, is not, as such, a part of Frombaugh's estate subject to ordinary administration. In such circumstance, then, Joan Nichols, as judgment creditor, was entitled to institute garnishment proceedings against Allstate. The latter's argument that its duty to respond is contingent upon an order from the probate court of Shawnee County is unavailing. When judgment was duly entered in Joan Nichols' action against Marshall, as the administrator of the Frombaugh estate, Allstate's contractual duty became fixed, inuring to the benefit and use of Joan Nichols, and became subject to garnishment.
 
 
 28
 Judgment affirmed.