Charles F. MILLER

v.

Warner M. DEPUY, Secretary of Revenue of the Commonwealth of Pennsylvania

and

Robert Campbell, Supervisor, Financial Responsibility Division, Bureau of Motor Vehicles of the Commonwealth of Pennsylvania.

Civ. A. No. 36820.

United States District Court
E. D. Pennsylvania.

Oct. 1, 1969.

David H. Kubert, Philadelphia, Pa., for plaintiff.

Nicholas A. Cipriani, Special Asst. Atty. Gen., Commonwealth of Pennsylvania, Harrisburg, Pa., for defendants.

## OPINION AND ORDER

BODY, District Judge.

The plaintiff is suing under 42 U.S.C. § 1983 to enjoin the Secretary of Revenue and the Supervisor of the Financial Responsibility Division of the Bureau of Motor Vehicles from suspending his driver's license and owner registration rights. Plaintiff's problems arose out of an accident involving plaintiff's truck which occurred on August 30, 1956.

On August 30, 1956, one Anderson, as part of his employment by plaintiff Miller, drove Miller's truck on a regular daily run from Philadelphia to Grasonville, Maryland, on Chesapeake Bay, to buy and transport back a load of freshly-caught crabs to the plaintiff's restaurant, called the Maryland Crab House, in Philadelphia.

The round trip between Philadelphia and Grasonville was between 250 and 275 miles. On this day, Anderson took with him for company his cousin, John Crosby Boyd, age seventeen. As part of his job Anderson had made the trip to Grasonville fifteen or twenty times previously. At a time previous to the accident, Anderson had discussed with Miller, his employer, the question of whether or not he could take someone with him to Grasonville for company. Miller made no comment, but he did not forbid it.

At Grasonville, Anderson and Boyd both helped to load the fresh crabs on the truck and to put ice on them. When the truck was ready to start its return journey to Philadelphia, Anderson felt tired or ill and asked Boyd to drive for him. Although Boyd was only seventeen years old, there is no evidence that he was not a competent driver. Along the way they stopped and Anderson picked up a puppy dog. After a short distance, the puppy dog vomited and the truck was halted to enable the dog to run a little. As Boyd continued to drive toward Philadelphia, his attention was distracted by the restless antics of the puppy which Anderson was trying to keep on his lap. Because the driver was distracted, the truck veered to the left side of the road where it collided with an approaching automobile being operated by Louis Ungolo. Ungolo and his daughter were injured. His wife and son were killed.

A survival and wrongful death action was brought against Boyd, Anderson and Miller. Judgments totalling $57,783.92 were returned against Boyd and Miller in Civil Action No. 23016 on May 21, 1962. Miller was held liable for Boyd's actions based upon Hendler Creamery Co. v. Miller, 153 Md. 264, 138 A. 1 (1923), and Restatement, Agency 2d § 79. Section 79, Illustration 5, reads:

"5. P employs A as a truck driver to carry a valuable load of perishable fruit to a distant town. Enroute, A becomes ill and unable to drive. Being unable to communicate with P, he employs B, a competent driver, to take his place for a trip. It may be found that A was authorized to employ B as P's servant."

The judgment creditors in the above civil action requested the Clerk of the District Court for the Eastern District of Pennsylvania, to send copies of the judgments to the Secretary of Revenue, since these judgments were unsatisfied within sixty (60) days.

In accordance with 75 Pa.Stat. § 1413 [1] of the Vehicle Code, the Secretary

---

1. "Suspension for nonpayment of judgments; exceptions

(a) The secretary, upon receipt of a certified copy of a judgment, shall forthwith suspend the license and registration of any resident operator or owner and any nonresident's operating privilege of any person against whom such judgment was rendered, except as hereinafter otherwise provided in this section and in section 1416.

(b) If the judgment creditor consents in writing, in such form as the secretary may prescribe, that the judgment debtor be allowed license and registration or nonresident's operating privilege, the same may be allowed by the secretary, in his discretion, for six (6) months from the date of such consent, and thereafter until such consent is revoked in writing, notwithstanding default in the payment of such judgment, or of any instalments thereof prescribed in section 1416, provided the judgment debtor furnishes proof of financial responsibility.

(c) Any person whose license, registration or nonresident's operating privilege, has been suspended, or is about to be suspended, or shall become subject to suspension under the provisions of this article, may be relieved from the effect of such judgment as hereinbefore prescribed in this article, if such person can present to or file with the secretary proper evi-

of Revenue suspended the right of the plaintiff to own or operate an automobile in the Commonwealth of Pennsylvania because of the unpaid judgments. No action was taken by the State of Maryland against the plaintiff under the reciprocal provisions of its act, and the Commonwealth of Pennsylvania did not suspend the privileges of the plaintiff on the basis of any reciprocity.

On June 10, 1963 plaintiff was discharged in bankruptcy from liability to pay the judgment rendered against him on May 21, 1962 in Civil Action No. 23016. Plaintiff through his attorney made demand upon the Secretary of Revenue of the Commonwealth of Pennsylvania for revocation of the said suspension of the license and owner registration rights. This demand was refused. The Secretary of Revenue cited Section 1414, 75 P.S., which provides in part:

"Such license, registration and nonresident's operating privilege shall remain so suspended and shall not be renewed nor shall any such license or registration be thereafter issued in the name of such person, including any such person not previously licensed, unless and until every such judgment is stayed, satisfied in full or to the extent hereinafter provided, and until the said person gives proof of financial responsibility subject to the exemption stated in sections 1413 and 1416 of this act.

A discharge in bankruptcy following the rendering of any such judgment shall not relieve the judgment debtor

from any of the requirements of this article."

No appeal was taken in the state court from the actions of the Secretary of Revenue.

The plaintiff filed the present action alleging a violation within 42 U.S.C. § 1983 [2] in that he was deprived under color of state law, of a right secured by federal law. The plaintiff contends his rights to travel and earn a living have been abridged and that the discharge in bankruptcy under the Supremacy Clause of the U. S. Constitution takes precedence over Sections 1413 and 1414 of the Pennsylvania Financial Responsibility Law.

The state contends that the suspension is within its police powers and relies on a previous decision in this case turning down a three-judge court request [3] which stated that Kesler v. Department of Public Safety of the State of Utah, 369 U.S. 153, 82 S.Ct. 807, 7 L.Ed.2d 641 (1962), was dispositive of the issue in this case and that no substantial constitutional question was presented requiring a three-judge court. The Kesler decision, discussed further below, upheld the financial responsibility law of Utah.

## CONCLUSIONS OF LAW

While the court in Miller v. Smith, 236 F.Supp. 927 (E.D.Pa.1964) held that a three-judge court was not necessary, this Court is not thereby required to render a verdict for the defendant, as the defendants in their brief suggest. The *Kesler* decision, this Court believes, is not dispositive of many of the crucial questions presented by this case.

dence that a bond or insurance policy as provided for in this article was in force and effect at the time of the accident, resulting in the judgment, and is or should be available for the satisfaction of the judgment, to the extent provided for in this article. 1959, April 29, P.L. 58, § 1413."

2. "Civil Action for Deprivation of Rights
    Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects,

or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

3. Miller v. Smith, 236 F.Supp. 927 (E.D. Pa.1964) (Opinion by Biggs, Ch. J.)

## PROCEDURAL ISSUES

■ This case does not present a problem of exhaustion of administrative remedies since under Damico, et al. v. California, et al., 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967) and Monroe v. Pope, 365 U.S. 167, 81 S.Ct. 473, 5 L. Ed.2d 492 (1961), exhaustion of state remedies is not necessary under Civil Rights Act, 42 U.S.C. § 1983. In McNeese v. Board of Education, etc., 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963) the court noted that the Civil Rights Act was "to provide a remedy in the federal courts supplementary to any remedy any State might have."

In point of fact, the plaintiff had no administrative remedy and was precluded from appealing the suspension in the courts of the state because the suspension under Section 1413 is considered mandatory. It has been held that appeals from suspensions of operators' licenses provided by 75 P.S. § 620 do not apply to the Financial Responsibility Section of the Vehicle Code. Com. v. Mercandante, 28 Beaver 104 (1967); Case of Williams Auto License, 17 Bucks 89 (1967).

■ While there are no allegations of willful or specific intent to deprive plaintiff of his federal rights, it was held in Monroe v. Pope, supra, that such intent is not necessary to state a cause of action under the Civil Rights Act, 42 U.S.C. § 1983. It is true that the defendants were acting according to the statutory commands of the Vehicle Code and exercised no discretion since the provisions involved here are mandatory. The statutes themselves are violative of plaintiff's rights. The interest of the public official toward the plaintiff personally has no bearing upon this Court's jurisdiction of the matter.

## EQUAL PROTECTION

■ This Court is of the belief that the plaintiff has been deprived of the equal protection of the laws in certain major respects. The fact that the rights suspended may not be considered to be constitutional rights is ineffective as an argument against denials of equal protection. As the U. S. Supreme Court stated in Sherbert v. Verner, 374 U.S. 398, 404, 83 S.Ct. 1790, 1794, 10 L.Ed.2d 965 (1963):

"* * * the * * * court's construction of the statute [cannot] be saved from constitutional infirmity on the ground that unemployment compensation benefits are not appellant's 'right' but merely a 'privilege' *   * "

See also Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

■ 1. That 75 P.S. § 1414 (Financial Responsibility Act) does not distinguish between the person who actually is at some fault in causing an accident and a person in plaintiff's position who is held liable upon the vicarious theory of agency embodied in Restatement, Agency 2nd, § 7, is constitutionally defective. This is so because the state's exercise of the police power to promote safety on the highway can in no direct and compelling way be served by suspending a person's ownership certificate and operator's license where in fact he has not been shown to be in any way an unsafe *driver*.

This is not even a case where an employer may have been negligent in selecting a driver for his truck. The fortuitous circumstance of his driver becoming sick or tired and thereby necessitating using a stranger to drive, does not indicate that the employer is a danger on the highways.

■ 2. Even if one were to ignore the above conclusion, this Court believes that the Financial Responsibility Act, 75 P.S. §§ 1413 and 1414, discriminates illegally against the person who is financially unable to pay a personal judgment against him. The fact that someone is able to pay a personal judgment does not by itself indicate that public safety in the future will thereby be promoted. The fact is, the judgment debtor may be perfectly willing to pay his judgment

but is simply financially unable to do so.[4]

3. Comparing the ordinary suspension of an operator's license under 75 P. S. § 619 with that under 75 P.S. § 1413, it becomes readily apparent that the suspension under Section 619 is discretionary with the Secretary of Revenue and provides for a hearing. Section 1413 is mandatory and provides for no hearing. It must be assumed that the legislature believed that a personal judgment would enable the defendant to defend his position with respect to his fault. This logic falls in the face of the instant situation where vicarious responsibility is imposed. While public policy may necessitate holding a person in the position of the instant plaintiff liable for the actions of his agent during the course of his employment, the same reasoning does not demand the taking away of a person's operator's and owner's rights. Legal responsibility for an accident does not automatically indicate that a person himself is an irresponsible driver.

4. A further classification defect not based upon a compelling rational purpose of safety is posed by the fact that no court appeal is allowed for Section 1413 suspensions of operator's permits. Suspensions made under 75 P.S. § .619 are provided with a de novo review in Common Pleas Court under Section 620 as are suspensions of operators' licenses and owners' registrations made under Section 1404 (security deposit for accident) and Section 1405 (reciprocity section with other states).

It is also interesting to note that under Section 1405, dealing with failure to post security for an accident in a foreign state:

"* * * if the law of such state or the District of Columbia contains reciprocal provisions, the secretary shall suspend the license of such resident if he was the *operator* and all of his registrations if he was the owner of a motor vehicle involved in such accident. * * *" [Emphasis supplied]

The distinction made between owner and operator in this section is further proof of the invidious discrimination worked against the instant plaintiff under Section 1413. At least, if the plaintiff had been required to post security in Maryland and was unable to, under Section 1405 the secretary would only have been able to suspend his registration, not his license. See License of George, 40 Pa.D. & C.2d 768 (1966). This Court does not see any rational distinction which would necessitate taking owners' and operators' rights too, simply because the civil action for the accident took place in Pennsylvania. Therefore, in light of equal protection considerations concerning a comparison of Section 1405 and Section 1413, this Court would have to hold that the operator's license suspension was unconstitutional. However, for the various reasons discussed above, this Court holds that the suspension of the owner's registration and license are both constitutionally defective.

## DUE PROCESS

This Court believes that the suspensions involved here restrict plaintiff's liberty under the Fourteenth Amendment without due process of law. See Wall v. King, 206 F.2d 878 (1st Cir., 1953), cert. den. 346 U.S. 915, 74 S.Ct. 275, 98 L.Ed. 411. The court in *Wall* stated:

"* * * it is unimportant whether, for one purpose or another, a license to operate motor vehicles may properly be described as a mere personal privilege rather than a property right. We have no doubt that the freedom to make use of one's own property, here a motor vehicle, as a means of getting about from place to place, whether in pursuit of business or pleasure, is a 'liberty' which under the Fourteenth Amendment cannot be denied or cur-

4. Cf. MacQuarrie v. McLaughlin, 294 F. Supp. 176 (D.Mass.1968), aff'd. 394 U.S.

456, 89 S.Ct. 1224, 22 L.Ed.2d 417 (1969), which takes opposite view.

tailed by a state without due process of law." [206 F.2d p. 882]

The right to drive an automobile is integrally bound up in the right to travel guaranteed by the Supreme Court's interpretation of the United States Constitution. See United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).

Here the plaintiff is being deprived, probably for life, of his driver's license without any determination that he is an unsafe driver. The suspension is mandatory and provides no right to appeal to a court. There is no right to a hearing. Where plaintiff was not even operating the vehicle, this Court believes that due process demands more.[5] As stated above in connection with equal protection denials, the harsh restrictions cannot possibly increase safety on the highway.

In Com. of Pennsylvania v. Conrad, 37 Northumb.L.J. 114 (1965), the court dealt with a situation quite similar to the one at bar. The only difference was that the suspension of the defendant's license there was based upon Section 1405. The defendant's son drove the defendant's car, uninsured, from Pennsylvania to New York where he was going to college. He did not have permission to use the car while at college. The son did use the car and became involved in an accident. The father could not post $2,800 as surety under New York's Financial Responsibility Law, and Pennsylvania recognized the New York suspension of motor vehicle rights under 75 P. S. § 1405. The suspension was appealed and heard de novo in the Court of Common Pleas. The court stated:

> "We believe here, however, there have been submitted to this court extenuating facts and circumstances which when considered together with the economic hardship do not justify the present suspension." [p. 118]

The court was alluding to the "extenuating facts and circumstances" of the fa-

ther not having operated the car at the time of the accident. The same reasoning must be applied to the instant case.

## SUPREMACY CLAUSE

Since the Court has decided that the suspensions here involved were violative of both the due process and equal protection clauses of the Fourteenth Amendment, there is little reason left to distinguish the cases of Kesler v. Department of Public Safety of the State of Utah, 369 U.S. 153, 82 S.Ct. 807, 7 L. Ed.2d 641 (1962) and Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L.Ed. 21 (1941).[6] In Reitz the court upheld New York's Financial Responsibility Law against claims that it conflicted with the Federal Bankruptcy Law and was therefore void under the Supremacy Clause of the Constitution. The court also upheld the law in face of due process arguments.

Kesler upheld Utah's Financial Responsibility Law against objections that it violated the Supremacy Clause because it allowed the creditor control over initiation and duration of the suspension of the driving rights. The court held that valid state interests were being served by the Financial Responsibility Law and that the creditor had such power was insufficient to state a constitutional claim under the Supremacy Clause.

Both Reitz and Kesler were dealing with cases where the suspensions were rendered against negligent operators themselves. This Court believes this fact is very crucial to due process and equal protection considerations, for, the court in Kesler was deeply impressed by the fact that the Financial Responsibility Law was apparently adopted to promote the legitimate state interest of highway safety. The safety interest cannot be served, this Court believes, when no negligence can be attributed to the judgment debtor. The primary effect of the statutes involved here is sole-

---

5. MacQuarrie v. McLaughlin, supra, takes opposite viewpoint.

6. Neither considered equal protection arguments.

ly for the collection of a debt. The court in *Kesler,* referring to *Reitz,* had this to say about such a purpose:

"* * * Because the statute was not designed to aid collection of debts but to enforce a policy against irresponsible driving, and because this policy would be frustrated if *negligent* drivers could avoid the statute by 'the simple expedient of voluntary bankruptcy,' no conflict with the Bankruptcy Act was found." [369 U.S. p. 169, 82 S.Ct. p. 817] [Emphasis supplied]

Without deciding whether the Supremacy Clause was violated in this case, this Court takes the position that *Kesler* and *Reitz* are clearly distinguishable from the present case.

### ORDER

Accordingly, this first day of October, 1969, it is ordered that the defendants revoke their suspension of the motor vehicle rights of the plaintiff, Charles F. Miller, to wit: his owner's certificate and operator's license, based upon Sections 1413 and 1414 of 75 Purdon's Statutes.