UNITED STATES of America ex rel.
Sidney J. CLARK, Petitioner.

v.

Raymond W. ANDERSON, Warden Delaware Correctional Center,
Respondent.

No. 182.

United States District Court,
D. Delaware.

March 12, 1973.

James M. Tunnell, Jr., and Paul P. Welsh, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for petitioner.

Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for respondent.

## OPINION

LATCHUM, District Judge.

Sidney J. Clark, the petitioner in this habeas corpus proceeding, seeks relief from two state court convictions and sentencings. In 1969 Del. Criminal Action No. 210, he was tried on December 16, 1970 in the Superior Court of the State of Delaware in and for New Castle County and convicted by a jury of embezzling the sum of $56,626.55 between April 7, 1967 and February 28, 1968 in violation of 11 Del.C. § 635. Clark was sentenced on this charge on January 29, 1971 to serve a five year term of imprisonment. In 1969 Del. Criminal Action No. 776, Clark was tried and convicted on May 18, 1971 of violating the same code section by embezzling $8,146.90 between May 17, 1968 and September 28, 1968. On October 8, 1971, he was sentenced to serve a term of five years imprisonment on that charge as well. Both convictions were affirmed by the Delaware Supreme Court on January 14, 1972.[1]

The principal issues raised by Clark before this Court were presented and decided adversely to him in the state court proceedings. Consequently Clark's state remedies have been effectively exhausted and the present petition is properly before this Court. Brown v. Allen, 344 U. S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953), rehearing den. 345 U.S. 946, 73 S.Ct. 827, 97 L.Ed. 1370 (1953).

Clark raises two main points: first, that the state trial court violated substantive due process conferred by the Fourteenth Amendment by applying Delaware's old embezzlement statute to his conduct after it determined that the amended embezzlement statute promulgated in 1955 was unconstitutional for vagueness; second, that he was denied procedural due process because the jury was biased by pre-trial publicity.

From the state court records, the following facts emerge: In Criminal Action No. 210, evidence was presented

1. Clark v. State, 287 A.2d 660 (Del.Supr.1972).

that Clark served as attorney for Allen Roy, Sr., next of friend of Allen Roy, Jr., his minor son, in a suit brought in the United States District Court for the District of Delaware against the Pennsylvania Railroad Company to recover damages for personal injuries suffered by the minor.[2] Following a trial in the District Court judgment was entered against the Railroad in favor of Roy, Sr., as next of friend for Roy, Jr., in the amount of $92,000. The Railroad delivered a check to Clark for $92,000 in payment of the judgment made out "to the order of Allen Roy, Sr., next friend of Allen Roy, Jr., and Sidney J. Clark and Harold Leshem, his attorneys."[3] Thereafter the attorneys applied to the District Court for an award of attorneys' fees. A fee of $30,660 was allowed and the Court directed that $61,340, the remaining balance of the $92,000 judgment, be deposited in the Registry of the District Court to be withdrawn on order of the Court only by a guardian duly appointed by the Orphans Court of the State of Delaware.[4] The Delaware Orphan's Court appointed Roy, Sr. as guardian of Roy, Jr., authorized Roy, Sr. to accept the sum of $61,340 as guardian from the Registry of the District Court, authorized the guardian from the amount so received to pay hospital bills and litigation expenses for Roy, Jr., authorized the payment of $1,000 to Roy, Sr. for lost time from work and ordered the remaining sum of $56,626.55 to be deposited in a guardianship account in the Delaware Trust Company, for the benefit of Roy, Jr.[5] Upon appointment of Roy, Sr. as guardian by the Orphan's Court, the District Court issued a check for $61,340 payable to Roy, Sr., as guardian of Roy, Jr.[6] Clark then induced Roy, Sr. to endorse the check with the promise to pay Roy, Sr. $1,000 for his expenses, to pay the other expenses and to deposit the remaining $56,626.55 in trust for the minor.[7] However, Clark did not deposit the $56,626.55 in trust for Roy, Jr., but instead converted the funds to his own personal use.[8]

In Criminal Action No. 776, the evidence revealed that Clark performed similar legal services for Buford Manlove, guardian for his six year old minor daughter, Linda Manlove. In that instance Clark engineered a $20,500 settlement of a personal injury claim of the minor. The Orphan's Court in and for New Castle County approved the settlement and ordered the guardian to pay Clark's attorney fees of $5,125, to pay $6,228.10 in medical expenses, and to pay the remaining $8,146.90 into a trust account for the minor.[9] When Clark received the $20,500 settlement check payable to the order of himself and the guardian, he induced the guardian to endorse the check, telling him it was Clark's duty to deposit all moneys and to take care of all bills.[10] However, Clark never deposited the remainder in trust for the minor but converted the money to his own personal use.

The indictments in Criminal Action Nos. 210 and 776 were returned on March 4 and September 5, 1969, respectively. Clark moved to dismiss the indictment in Criminal Action No. 210 on the ground that the statute which he was charged with violating was unconstitutional for vagueness. The embezzlement statute, 11 Del.C. § 635 as amended by 50 Del.Laws, Ch. 299, § 1, eff. June 20, 1955 read as follows:

"Whoever embezzles money or other property which may be the subject of larceny, to the value of $100 or more; or whoever receives, conceals, or re-

2. Tr. 52–54.

3. State's Ex. 1.

4. State's Exs. 2, 4, 5, 6.

5. State's Ex. 4.

6. State's Ex. 3.

7. Tr. 59–61; 78–79.

8. State's Exs. 12, 13; Tr. 144–145; 164–165.

9. State's Ex. 1; Tr. 50; it was obvious the remaining balance should have been $9,146.90.

10. State's Ex. 2; Tr. 56.

tains the same knowing it to have been embezzled, is guilty of a felony and shall be fined in such amount or imprisoned for such term, or both, as the Court, in its discretion, may determine."

In a letter opinion rendered on June 9, 1970, the late Judge Messick of the Superior Court held that the amended embezzlement statute was unconstitutionally vague because it failed to define embezzlement and because there was no common law definition of embezzlement which might be referred to in order to cure the statutory defect. However, Judge Messick refused to dismiss the indictment. He held that since the amended embezzlement statute ("new § 635") was invalid, the former embezzlement statute, which did define embezzlement, was never repealed, and the indictment properly charged a crime under the former embezzlement statute ("old § 635"). Old § 635 reads as follows:

"Whoever, being a bailee of money or other property which may be the subject of larceny, to the value of $100 or more, embezzles or fraudulently converts the same to his own use, shall be fined in such amount or imprisoned for such term, or both, as the court, in its discretion, may determine."

The Attorney General appealed Judge Messick's ruling that new § 635 was unconstitutional. However, the Delaware Supreme Court under its Rule 5(10)(b) dismissed the state's appeal as a premature interlocutory order. On September 22, 1970, the parties stipulated that Judge Messick's ruling that new § 635 was unconstitutionally vague made in Criminal Action No. 210 was equally applicable to Criminal Action No. 776. Thereafter Clark was found guilty of embezzlement under old § 635 after trial in both criminal actions and sentenced to five years imprisonment in each.

On appeal of his convictions to the Delaware Supreme Court, Clark challenged Judge Messick's opinion of June 9, 1970 on two grounds. First, Clark contended that old § 635 under which he was convicted was not a valid law at the time of his alleged crime because new § 635 appeared on the face of the statute books of the state so that the application of old § 635 to his prosecution amounted to *ex post facto* judicial legislating and also was done in the absence of adequate notice of the statute in effect at the time of his acts. Second, Clark argued that even if old § 635 were in effect and he had effective notice of its existence, he still could not be prosecuted under old § 635 because that statute applied to "embezzlement by bailees" while his actions as an attorney handling a client's funds were the actions of a fiduciary, and a specific statute dealing with "embezzlement by fiduciaries", 11 Del.C. § 642 ("old § 642") had been repealed by 50 Laws of Del., Chap. 299 § 3, eff. June 20, 1955. Old § 642 read as follows:

"(a) Whoever, being an executor, administrator, guardian, justice of the peace, constable or attorney-at-law, receives or collects any money for, or on account of, any person, estate or corporation, and willfully and fraudulently misapplies or converts to his own use the money so received or collected, is guilty of a felony, and shall be whipped with not more than 10 lashes, and imprisoned not less than 1 nor more than 5 years."

The Delaware Supreme Court rejected both contentions. Clark v. State, 287 A.2d 660 (Del.Supr.1972). With regard to Clark's first argument, the court held that the application of old § 635 was not *ex post facto* judicial legislating because under established Delaware law if an amendment of a valid statute is unconstitutional, it is invalid from its inception and is, in legal contemplation, as though it had never been passed so that old § 635 was never amended. The court also held that Clark had sufficient notice, because as a citizen of Delaware, he was presumed to know the statutes and existing laws of this state including judicial rules of statutory construction. Id. at 664. In rejecting Clark's second argument, the court held that even

though old § 642 prescribed a harsher penalty for embezzlement by a fiduciary than was prescribed for a bailee under old § 635, a fiduciary is only a type of bailee and there is no reason why the state could not prosecute a fiduciary under the general section applicable to all bailees. Id. at 665. The court declined to decide whether new § 635 was unconstitutional for two reasons: first, the state did not file a cross-appeal, and second, Judge Messick's ruling, if erroneous, benefited Clark because violation of old § 635 was only a misdemeanor while violation of new § 635 was a felony.[11] The court held that the indictment, the evidence, and the charge were sufficient to justify a conviction under either the "old" or "new" § 635. Id. at 664 n. 5.

Clark also appealed his convictions on the ground that pre-trial publicity had deprived him of his right to a fair trial by an unbiased jury. The court also rejected this contention, reasoning that any prejudice against Clark because of pre-trial publicity had abated by the time of trial.

As previously mentioned, the principal issues raised by Clark in this proceeding are whether his trial and convictions under old § 635 amounted to a denial of substantive due process and whether pre-trial publicity resulted in a prejudicial jury so that Clark was denied procedural due process.

■ Clark's first contention has two aspects. First, whether the state court's decision to try him under old § 635 amounted to "judicial *ex post facto* legislation" of the type proscribed by the United States Supreme Court in Bouie v. City of Columbia, 378 U.S. 347, 84 S. Ct. 1697, 12 L.Ed.2d 894 (1964), and second, whether Clark had received the fair notice required by *Bouie* that his contemplated conduct would be governed by old § 635.

In considering these aspects, it is necessary to examine the factual circumstances present in *Bouie*. The situation confronting the Supreme Court there was that the South Carolina Supreme Court had suddenly and without warning widened the application of a criminal trespass statute. Prior to the South Carolina Court's decision in question the statute had judically been limited to making unlawful the entry on the premises of another after receiving notice not to enter. The petitioners in *Bouie* were negroes who had engaged in a "sit in" at a lunch counter in Columbia, South Carolina. Only after the petitioners sat down at a lunch counter was a "no trespassing" sign put up. When they refused to leave they were charged with and convicted of criminal trespass. The State Supreme Court in affirming the convictions chose not to follow the old rule that proof of notice before entry was necessary to sustain a conviction under the statute and held that the statute also covered the act of remaining on the premises of another after receiving notice to leave. The United States Supreme Court held that while the latter construction would be valid for the future, the rule could not be applied retrospectively, any more than a legislative enactment may be used to impose criminal penalties for conduct committed at a time when the conduct was not fairly stated to be criminal. Id. at 362, 84 S. Ct. 1697. Therefore the South Carolina Court was prohibited from applying the new rule of statutory construction retrospectively. In contrast here, the Delaware Courts did not suddenly enunciate a new rule in Clark's cases and apply it retrospectively to Clark. At the time of Clark's actions, it was settled Delaware law that a prior statute continues in effect where there has been an attempted change by an invalid amendment. Wilmington Trust Co. v. Highfield, 4 W.W. Harr. 394, 153 A. 864 (Del.Supr.1931); Equitable Guarantee & Trust Co. v. Donahoe, 3 Pennewill 191, 49 A. 372, 374 (Del.Super.1901); Bovay et al. v. H. M. Byllesby & Co., 27 Del.Ch. 76, 30 A.2d

---

11. 11 Del.C. § 101(b) provides that any crime or offense not specifically desig- nated by law to be a felony is a misdemeanor.

865, 866 (Del.Ch. 1943); *See* Abrahams v. Superior Court, 11 Terry 394, 131 A. 2d 662, 672 (Del.Supr.1957); State ex rel. James v. Schorr, 6 Terry 18, 65 A.2d 810, 822 (Del.Supr.1949). The decision by the Delaware courts that old § 635 was revived in the event that new § 635 was unconstitutional was simply an application of the settled rule, cf. Reitz v. Mealey, 314 U.S. 33, 62 S.Ct. 24, 86 L. Ed. 21 (1941). Thus Clark was not the victim of a new rule of statutory construction applied retrospectively, and there was no impermissible judicial *ex post facto* legislation.

 The second consideration mandated by *Bouie* is whether Clark had fair notice that his conduct would be governed by old § 635. The Court in *Bouie* reiterated the standard it established in United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 812, 98 L.Ed. 989 (1954) that "a person of ordinary intelligence [must have] fair notice that his contemplated conduct is forbidden by the statute. The underlying principle is that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." (footnote omitted). In applying that standard, a legal fiction is applied whereby a person of ordinary intelligence, in order to determine whether his intended conduct is lawful, is under a duty to ascertain the state law or laws which might be applicable to his conduct. If the state laws, including established rules of judicial construction, have sufficient publication as to be discoverable by reasonable means, and if the statute itself contains ascertainable standards to determine what it proscribes, then the actor can be held criminally liable for his conduct. See Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); Williams v. North Carolina, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945); Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681 (1908). Clark has not contended that old § 635 is itself vague, so that the Court's inquiry is limited to whether he had fair notice

that old § 635 was operative. If Clark had satisfied his duty to investigate he would have discovered that old § 635 was operative to apply criminal penalties to his conduct. After discovering new § 635 and concluding that the law was invalid because he was unable to determine whether his conduct was unlawful under it, Clark had a duty to go further and determine the rule of statutory construction in Delaware regarding an invalid amendment. In fulfilling this duty, Clark would have discovered that under Delaware case law old § 635 was never amended because new § 635 was a nullity from its inception. Therefore it can be said that Clark had fair notice that old § 635 would govern his intended conduct and his prosecution under old § 635 did not violate due process. Imposition of a duty to investigate is particularly appropriate in Clark's case because as a lawyer, former prosecutor and Municipal Judge, he knew that his conduct was improper and immoral. His conduct contrasts with the conduct of the petitioners in *Bouie* who, as the Supreme Court noted specially, were not guilty of improper or immoral conduct, and thus were entitled to the protection of a high notice standard. See Almeida v. Rundle, 255 F.Supp. 936 (E.D.Pa., 1966); cf. Lambert v. California, supra, 355 U.S. at 228, 78 S.Ct. 240.

Clark also urges that he did not have fair notice that old § 635 would be applicable to "embezzlement by an attorney" because previously old § 635 had been given a narrow construction by the Delaware Courts in State v. Warwick, 9 Terry 568, 108 A.2d 85 (Del.Super., 1954). In that case the Superior Court Judge dismissed an indictment under old § 635, which charged the Prothonotary of New Castle County with embezzlement of fees due to New Castle County. The court held that the Prothonotary, who was duty bound to pay over to the county within 10 days the fees collected by him for county purposes, did not enter into a bailor-bailee relationship with the county but rather a creditor-debtor or trust relationship, and should have

been indicted under 11 Del.C. § 638 which applied to embezzlement by a clerk. The court there held that a bailee under Delaware law did not include a debtor or a fiduciary, so that indictment by the clerk under old § 635, which proscribed embezzlement by bailees, was improper. Clark urges that according to the rationale of *Warwick*, his alleged embezzlement would have been properly indictable only under 11 Del.C. § 642 had it not been repealed in 1955 because that statute specifically proscribed embezzlement by an attorney and also because his alleged embezzlement was not committed in the role of bailee but as a debtor or fiduciary. Clark argues that therefore his indictment under old § 635 was improper under the rationale of *Warwick* and a retrospective expansive application of old § 635 to his conduct in effect overruling *Warwick* would violate *Bouie*.

The Court is unable to agree with petitioner's argument for two reasons. First of all, the court in *Warwick* did not hold that a clerk could only be indicted under 11 Del.C. § 638 under all circumstances. Because of the duties imposed upon him by Delaware law, the Prothonotary could never come into possession of funds due to the county in the capacity of a bailee so that it was legally impossible for him to embezzle funds due to New Castle County in the capacity of a bailee. Presumably if his legal duties were such that he could hold some county funds as bailee, his embezzlement of those funds would have been actionable under old § 635 as well as 11 Del.C. § 638. An attorney, on the other hand, may hold money for a client in the capacity of bailee, fiduciary or debtor, and when he misappropriates the funds in the capacity of a bailee, he could have properly been indicted under old § 635 or old § 642 had the latter statute not been repealed. The definition of a bailment used in *Warwick* was "a delivery of personalty for some particular purpose, or on mere deposit, upon a contract, express or implied, that after the purpose has been fulfilled it shall be re-

delivered to the person who delivered it, or otherwise dealt with according to his directions, or kept until he reclaims it, as the case may be." Under this definition of a bailment, Clark's embezzlement occurred in the capacity of a bailee. In Criminal Action No. 210 Clark received the check from the guardian and agreed to pay the expenses of the litigation and deposit the remainder in a trust account for the minor. In Criminal Action No. 776 Clark received the check from the guardian and again agreed to take care of all the bills and deposit the remainder. Therefore Clark's conduct would not only have been indictable as embezzlement as an attorney under old § 642 had it not been repealed, but also indictable as embezzlement by a bailee under old § 635 because he received the funds in the capacity of a bailee as defined in *Warwick*. Consequently, the state court's decision that Clark's conduct was proscribed by old § 635 was not a reversal of *Warwick* applied retrospectively to him as occurred in *Bouie*.

■ Secondly, the Supreme Court noted in *Bouie* that a long line of decisions by the highest court of South Carolina consistently held that a conviction under the criminal trespass statute required proof of notice not to enter prior to entry. In the instant case, on the other hand, Clark can point to no opinion by Delaware's highest court narrowly interpreting old § 635, but instead cites only one opinion by the state trial court. Even if the *Warwick* opinion stood for the proposition which Clark attributes to it, it could not be relied upon as a final statement of statutory construction of old § 635 because the highest court of the state had never had an opportunity to rule on the point.

For the foregoing reasons this Court holds that the application of old § 635 to Clark's conduct did not violate the rule set forth by the Supreme Court in Bouie v. City of Columbia.

Clark's second principal contention is that because of extensive pre-trial publicity, he was deprived of his due proc-

ess right to a fair trial before an unbiased jury. This contention is based on the fact that both Delaware newspapers of state-wide circulation carried news stories concerning his resignation from the bar and subsequent disbarment, various pre-trial proceedings, an editorial, three letters to editors, and several other stories dealing in some way with the charges. However, most of the publications occurred more than one year prior to Clark's trial in Criminal Action No. 210. Clark cites Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963); Estes v. Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) and Pamplin v. Mason, 364 F.2d 1 (C.A. 5, 1966) in support of his contention. However, all of those cases involve potential bias considerably greater than was present in the instant situation. In Irvin eight of the twelve jurors on voir dire admitted they thought the defendant was guilty. In Rideau, the pre-trial publicity complained of was three telecasts of the defendant admitting guilt after police interrogation which were seen by more than 100,000 viewers, in the parish where the trial was held, which had a total population of 150,000 persons. In Estes, the case was of nation-wide notoriety and there was a profusion of television cameramen in the courtroom further lending to an atmosphere of notoriety. In Sheppard the most blatant pre-trial activity was a televised three-day inquest held three months before trial, and publication of the names of prospective jurors who then received letters and calls about the case, as well as widespread publicity in the newspapers, radio and television. In addition, at the trial itself special tables were set up for the reporters, the jurors were made aware of matters discussed in chambers and, despite the widespread news coverage, there was no sequestering of jurors until deliberation and even then the jurors were permitted to make unsupervised telephone calls. In Pamplin, a change of venue was denied in the trial of a negro charged with assault on a police officer in connection with leading the first racial demonstration in a southern community, which had a population of only 6,918.

■■ The Supreme Court in Sheppard enunciated a test whereby identifiable prejudice need not be shown if the totality of circumstances indicates that prejudice is likely. Therefore even if Clark is unable to show any identifiable prejudice, he may still demonstrate his right to a fair trial was violated if the totality of circumstances point to a likelihood of bias on the part of jury members. Clark did not show any identifiable prejudice. Of the nineteen jurors fully questioned on voir dire examination, only one stated that he had formed an opinion as to Clark's guilt, and he was discharged for cause. Only about one-half of the others admitted to even hearing or reading about the case. With the one exception, no challenges for cause were made.

Nor was there a showing of such circumstances as to create a presumption of bias. The pre-trial publicity was not so pervasive as to create the kind of atmosphere which the Supreme Court condemned in Sheppard. In contrast to the massive pre-trial publicity in Sheppard, most of the pre-trial publicity in the instant case occurred more than a year prior to Clark's trial in Criminal Action No. 210. The only events publicized within the year prior to trial were a report of Judge Messick's oral ruling that new § 635 was unconstitutional (March 30–31, 1970), Judge Messick's written opinion upholding the indictment as valid under old § 635 (June 30, 1970), a report of the state Supreme Court's reversal of the Court of Chancery's ruling on certain subpoenas in the case (July 3, 1970), a report on the state Supreme Court's dismissal of the state's appeal of Judge Messick's ruling of the unconstitutionality of new § 635 (October 12–13, 1970), and a report of the trial court's denial of Clark's motion to dismiss (De-

cember 11, 1970). Trial was held in Criminal Action No. 210 on December 15–17 and reports of the trial were published. The report of sentencing in Criminal Action No. 210 was made on January 30, 1971. The trial in Criminal Action No. 776 was held on May 17–18, 1971. Although the above newspaper accounts were made within the year prior to both trials, they were of the normal type of publicity to be expected in the trial of a prominent community member. The Court finds that the totality of circumstances in the instant case does not create a presumption of prejudice and since no actual prejudice has been shown, the Court concludes that Clark's procedural due process right to a fair trial by an unbiased jury was not violated.

An order will be entered dismissing the petition for habeas corpus and denying the writ.