Robert H. SAUNDERS, Defendant below, Appellant,

v.

STATE of Delaware, Plaintiff below, Appellee.

Supreme Court of Delaware.

Submitted April 15, 1977.

Decided June 13, 1977.

Joseph A. Hurley, Wilmington, for defendant below, appellant.

George H. Seitz, III, Chief Deputy Atty. Gen., Thomas J. Capano, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, Chief Justice, McNEILLY, Justice, and MARVEL, Chancellor.

McNEILLY, Justice:

In this appeal from defendant's Superior Court jury convictions of criminal solicitation in the second degree (to commit robbery) (11 *Del.C.* § 502)[1] and conspiracy in the second degree (11 *Del.C.* § 512),[2] several grounds for reversal are asserted which we need not reach because we find that the Trial Judge committed reversible error by failing to excuse two possibly prejudiced jurors and failing to declare a mistrial.

1. *Del.C.* § 502 provides:

"A person is guilty of criminal solicitation in the second degree when, intending that another person engage in conduct constituting a felony, he solicits, requests, commands, importunes, or otherwise attempts to cause the other person to engage in conduct which would constitute the felony or an attempt to commit the felony, or which would establish the other's complicity in its commission or attempted commission."

2. 11 *Del.C.* § 512 provides:

"A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of a felony, he:

## I

In the evening of the second day of trial, defendant voluntarily committed himself to the psychiatric ward of the Delaware Division of the Wilmington Medical Center. The next day the jury was temporarily excused and the case continued in order to ascertain the condition and nature of defendant's commitment. The Clinical Director of the Delaware State Hospital, called into the case to examine the defendant, diagnosed defendant's condition as "significantly depressed and a substantial suicide hazard." The Trial Judge committed defendant to the Delaware State Hospital subject to further review in three days, temporarily excused the jury again, and reserved for decision a motion made by defendant for a mistrial. At the State's request, the Trial Judge granted an in camera hearing, outside the presence of defendant or his counsel, apprising the Trial Judge of investigative information of other criminal activities and possible malingering of defendant, offered by the State to support its objections to defendant's motion for a mistrial.[3]

Later that night, before he could be transported to the Delaware State Hospital, defendant left the psychiatric ward of the Delaware Division of the Wilmington Medical Center without authorization. He was apprehended a short time later in nearby Pennsylvania by agents of the Federal Bureau of Investigations possessing a warrant for his arrest on another charge, returned to Delaware, and, the next day, committed

(1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or

(2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and he or another person with whom he conspired commits an overt act in pursuance of the conspiracy."

3. For future guidance, we take the occasion to express disapproval of such in camera proceedings during trial. Since reversal is impelled on other grounds, there is no need to pursue the subject.

to Delaware State Hospital under $137,000. bail.

On the sixth day after the original continuance, defendant's motion for a mistrial was denied, and trial before the jury was resumed, following testimony of the Clinical Director of the Delaware State Hospital, reversing himself, that defendant's depression and suicidal tendencies had terminated.

Because of newspaper publicity surrounding these developments, defense counsel requested that an inquiry be directed to the jury to determine if any of the jurors were aware of the news articles and, if so, if there was possible prejudice. Two jurors responded affirmatively and were individually questioned by the Trial Judge to determine possible prejudice.

## II

This case is a sequel to *United States ex rel. Clark v. Anderson*, D.Del., 356 F.Supp. 445 (1973), reversed on other grounds, 3rd Cir., 502 F.2d 1080 (1974); *Payne et al. v. State*, Del.Supr., 367 A.2d 1010 (1976) and *Smith v. State*, Del.Supr., 317 A.2d 20 (1974). In *Clark* and *Payne* the Trial Court took adequate steps to screen possible contamination from the jury before trial; in *Smith* the Trial Judge, during trial, conducted an inquiry to determine whether a newspaper article had been read by the jurors or discussed by them and, upon learning that one juror had read the article but had not discussed it with any other juror, excused and replaced the juror with an alternate. In the instant case, on the other hand, the two jurors not only were aware of the articles but, at the outset of the Trial Judge's questioning, expressed possible prejudice arising therefrom. Faced with a mistrial because of lack of alternate jurors, the Trial Judge finally satisfied himself, after extensive rehabilitative and leading questioning, that the two jurors could properly perform their duties and decide the case fairly, without bias or prejudice, on the evidence presented.

■ The conduct of an inquiry into the possibility of prejudice, and the giving of curative instructions, is entirely within the discretion of the Trial Judge and will not be reversed absent a showing of abuse. *Smith v. State*, supra.

■ Having neither observed nor heard the jurors' responses to the Court's inquiry, we are reluctant to reverse the Trial Judge, obviously satisfied that his questioning and instructions had purged the jurors of any possible initial prejudice. After reviewing the record,[4] however, we have concluded

4. THE COURT: All right. Has that influenced you in any way as to any opinions you have in regard to this case?
MRS. M: Well, I can't say that it hasn't. I can say that it possibly might make me think a bit more about it.
THE COURT: What?
MRS. M: That I would feel perhaps he was guilty of not this crime but guilty of many things.
THE COURT: Well, can you be more specific, Mrs. M?
MRS. M: Well, it just makes me think that if—Well, let's again be truthful. I am just using my own words. If he was in trouble before, he's now in trouble again, that perhaps he isn't as innocent as they would want you to believe.
THE COURT: Do you think that you can still make a judgment based solely on the facts and evidence presented during the course of this trial or the testimony and evidence presented during the course of this trial?
MRS. M: Well, I would want to say yes, but I'm really not sure.

THE COURT: To what extent do you think your knowledge of that article and the written word in that article would influence you, if at all, in reaching a decision in this case?
MRS. M: I am sure I understand you other than, as I said before, if he was in trouble before, perhaps—
THE COURT: Can you tell us what you remember about that article?
MRS. M: It said that Mr. Davis had been at the State Hospital and something about the FBI wanting him for another charge. That's about all I remember out of the article.
THE COURT: Has that article in any way influenced you or changed your position at all about this case so far?
MRS. M: I don't think so, but I don't know if I would be able to put it out of my mind completely.
THE COURT: Would you be able to decide this case solely from the evidence and facts presented during the course of the trial?
MRS. M: I think so, but I—I would think so, yes.

that sufficient bias and prejudice on the part of the two jurors is manifested to require a new trial as a matter of due process.

\*   \*   \*   \*   \*   \*

Reversed.

THE COURT: Has your opinion about any of the parties involved in this trial changed since reading that article?

MRS. M: I think it has slightly.

THE COURT: Can you tell us as to what party and what degree it changed?

MRS. M: I think—just the information that Mr. Davis has also been charged on another crime sticks in my mind and, I don't know, probably colors my view of him.

THE COURT: Mr. Davis?

MRS. M: No. Mr. Saunders. I'm sorry.

THE COURT: Mr. Saunders?

MRS. M: Mr. Saunders.

THE COURT: How does that color your view of him?

MRS. M: Well, just the—I mean just the idea that there is another charge makes me think, I guess, perhaps more that he would be guilty in this case. I don't know. It's just a weight in my mind.

THE COURT: Can you tell us what you mean by a weight in your mind?

MRS. M: I mean it doesn't push me over the edge to say that he is guilty, but it's just perhaps more of a chance that he is than that he isn't.